UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN BURKE, | : | Case No. 2:22-cv-4421 |
| Plaintiff, | : | |
| vs. | : | District Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth P. Deavers |
| ARAMARK CORRECTIONAL SERVICES, et al., | : | |
| Defendants. | : | |

ORDER AND
REPORT AND RECOMMENDATION

Plaintiff, a prisoner previously at the Warren Correctional Institution (WCI), currently located at the Chillicothe Correctional Institution, has filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against thirty defendants, including Aramark Correctional Services, the Ohio Department of Rehabilitation and Correction (ODRC), ODRC officials, and WCI employees. (Doc. 1-1, Complaint at PageID 8-12).[1]  By separate Order plaintiff has been granted leave to proceed *in forma pauperis.*

This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

---

[1] Complaints based on similar factual allegations were filed in the following related cases: *Woods v. Aramark Corr. Servs.*, Case No. 2:22-cv-4220 (S.D. Ohio Dec. 19, 2022); *King v. Aramark Corr. Servs.*, Case No. 2:23-cv-156 (S.D. Ohio Jan. 12, 2023).  *See also Thompson v. Aramark Corr. Servs.,* Case No. 2:23-cv- 1275 (S.D. Ohio Apr. 11, 2023).

**Screening of Plaintiff's Complaint**

**A. Legal Standard**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(2) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure

---

[2] Formerly 28 U.S.C. § 1915(d).

12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## B. Allegations in the Complaint

In the complaint, plaintiff alleges that he was served contaminated food during dinner on November 27, 2021 while at WCI. (Doc. 1-1, Complaint at PageID 16). According to plaintiff, defendant Aramark, Aramark coordinator Woods, John/Jane Doe Aramark supervisor, and other ODRC correctional officers intentionally served plaintiff and other inmates food out of a trash can. (*Id.*). Plaintiff alleges that defendant Sgt Maggard reviewed the November 27, 2021 food service video footage with plaintiff. According to plaintiff, the video shows Woods retrieving beans out of the trash can and putting them on the serving line. (*Id.* at 18). Plaintiff further alleges that defendants Aramark employee Ms. Moody and C.O. Moody both confirmed that the food was served from the trash can.

Plaintiff alleges that hours after dinner, he experienced symptoms in the form of upset stomach, cramps, severe diarrhea, and vomiting. (*Id.* at PageID 16). After his symptom persisted for several days, plaintiff alleges that a correctional officer informed plaintiff that two inmate food-workers—inmates Edward Smith and Richard Burton—alerted a lieutenant and officer that defendant Woods "had retrieved beans from a contaminated trash can, and had them placed on trays to be served." (*Id.* at PageID 17). According to plaintiff, he was informed that Smith and Burton were placed in segregation in an attempt to silence them.

On December 2, 2021, plaintiff claims that he filed a kite with defendant institutional inspector Isaac Bullock concerning the November 27, 2021 dinner. Plaintiff claims that Bullock informed plaintiff that the issue "has been verified and addressed" and that "[c]orrective actions have been taken." (*Id.*). Plaintiff alleges that instead of directing staff to send plaintiff to medical, Bullock informed plaintiff that he would have to complete a health service request for his medical needs, which plaintiff notes would take several days. According to plaintiff, ODRC medical staff refused to see him in an alleged effort to cover up that contaminated food was served and to avoid

4

diagnosing plaintiff. (*Id.* at PageID 18-19). As detailed below, plaintiff alleges that instead of providing him with medical care, defendants attempted to cover-up the incident and retaliated against inmates who sought medical attention or filed grievances.

Plaintiff alleges that defendant Jane Doe health-care administrator provided a list of all inmates who reported stomach issues to defendants Bullock, Agee and Tatman.³ (*Id.* at PageID 19). According to plaintiff, on December 5, 2021, defendant officer Cook informed plaintiff that he and the other inmates reporting symptoms would not be permitted to leave their cells until they had a conversation with a "white shirt," which plaintiff indicates refers to a major, captain, lieutenant, or sergeant. Plaintiff alleges that defendant Lt. Tatman—sent by Captain Agee—subsequently screamed at the inmates reporting symptoms, noting that he had seen their medical complaints and stating that "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do? . . . "You[']r[e] sick so what . . . sleep it the fuck off." (*Id.*). Tatman allegedly attempted to intimidate inmates from going to medical or further reporting their symptoms, threating that he would make their lives living hell if his "staff gets in trouble over that Aramark bitch" and presented them with a choice to go to medical or remain locked down. (*Id.*).

According to plaintiff, family members of the impacted inmates called the institution, demanding that their family members be seen by medical or they would contact the state troopers. (*Id.* at PageID 20). Plaintiff claims that he and nine other inmates were subsequently escorted to medical by defendant Ms. Penunzio. Although he was taken to medical, plaintiff claims that

---

³ In doing so, plaintiff claims that defendant violated the Health Insurance Portability and Accountability Act ("HIPPA"). (*See* Doc. 21). However, "HIPPA regulations do not confer a private right of action on an individual." *Burley v. Rider,* No. 1:17-CV-88, 2018 WL 6033531, at *5 (W.D. Mich. Aug. 27, 2018), *report and recommendation adopted,* No. 1:17-CV-88, 2018 WL 4443071 (W.D. Mich. Sept. 18, 2018). Out of an abundance of caution and as indicated below, plaintiff may proceed with the complaint against this defendant, as the Court liberally construes the complaint to allege that defendant acted within the alleged course of retaliation.

defendants nurse practitioners Sky and Rachel conducted a "fake screening" consisting solely of checking their blood pressure before stating "well we seen you." (*Id.*). Plaintiff further alleges that instead of providing him with any treatment, the defendant nurses made jokes about the inmates being fed out of the trash can and stated "this is what you signed up for coming to prison." (*Id.* at PageID 24).

Plaintiff claims the inmates were taken from medical and placed on "quarantine status" until December 9, 2021, as a punishment for filing grievances and seeking medical treatment. (*Id.* at PageID 20-21). During this time, plaintiff claims that he was so sick he could not leave his bed, but that defendants Epperson and Farmer disregarded his requests to see medical. (*Id.* at PageID 21). Agee allegedly attributed the lockdown to COVID-19, however plaintiff notes that this contradicts Tatman's earlier comments and that none of the inmates were tested for COVID-19. During the lockdown, which plaintiff claims was only imposed against those who sought medical after Tatman's comments, plaintiff claims inmates were restricted from filing grievances or complaints.

Plaintiff claims that on December 6, 2021, after he continued to demand medical attention, plaintiff and other inmates were taken to medical. According to plaintiff, he saw defendant John Doe doctor, who indicated that "nobody says you all have COVID-19," refused to diagnose plaintiff or others, and kept them on "quarantine status," despite failing to explain why they were locked down. (*Id.* at PageID 22). Plaintiff claims defendant warden Mitchell-Jackson was present and spoke with medical staff at this time. According to plaintiff, Jackson yelled at the inmates about having to come into work early because of them and otherwise refused to converse with them.

Plaintiff claims that defendants Luneke, Back, Williams, Macintosh, Wells, and several others subsequently held a "town hall meeting," during which Luneke stated that inmates were not

transferring institutions for at least eight weeks, their doors were to remain closed, and no questions were to be answered regarding "Aramark." (*Id.* at PageID 22). Plaintiff alleges that defendants placed them on lock-down "to prevent plaintiff and the other inmates from exposing that they were fed contaminated food by Aramark" and in retaliation for filing informal complaints and for seeking information and medical attention in connection with the allegedly contaminated food. (*Id.* at PageID 23).

On or around January 10, 2022, plaintiff alleges that all the inmates in the unit were transferred to the Chillicothe Correctional Center on an "emergency transfer." (*Id.*).

As relief, plaintiff seeks monetary damages. (*Id.* at PageID 26).

**C. Analysis.**

Based on the above factual allegations, the Court understands plaintiff to bring Eighth Amendment deliberate indifference and First Amendment retaliation claims, as well as state-law claims, against defendants in their individual and official capacities. (*See id.* at PageID 23-25).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his First and/or Eighth Amendment claims (as well as his supplemental state-law claims) against defendants Woods, John/Jane Doe Aramark supervisor, nurse Sky, nurse Rachel, John Doe physician, Jane Doe health-care administrator, Agee, Tatman, Mitchell-Jackson, Bullock, Williams, Cook, Luneke, Back, Macintosh, Wells, Farmer, and Epperson in their individual capacities. As detailed above, plaintiff alleges that these defendants intentionally served him and others contaminated food, denied him medical treatment/were deliberately indifferent to his medical needs, and/or retaliated against him. These claims are deserving of further development and may proceed at this juncture.

Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

7

As an initial matter, plaintiff's claims against the state defendants in their official capacities are subject to dismissal. As noted above, plaintiff seeks relief in the form of money damages. (*See* Doc. 1 at PageID 26). Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.") (citation and ellipsis omitted)). Therefore, all of the named state defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

The complaint must also be dismissed against defendants Bratton, Stanforth, Sandman, Ms. S, and Kearns. Although these individuals are named as defendants to this action, the complaint contains no factual allegations against them. To survive dismissal for failure to state a claim upon which relief may be granted, plaintiff must plead factual content that allows the Court to reasonably infer that a named defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at

678. Absent any specific factual allegations against these defendants, the complaint should be dismissed as to defendants Bratton, Stanforth, Sandman, Ms. S, and Kearns for failure to state a claim upon which relief may be granted.

Similarly, the complaint should be dismissed against defendants Ms. Penunzio, Ms. Morris, Sgt. Maggard, Ms. Moody, and C.O. Moody. Plaintiff has pled insufficient facts to suggest that these defendants violated his rights. Plaintiff's only allegations against defendants Penunzio and Morris is that Penunzio escorted him and other inmates to medical and that Ms. Morris was working when Jane Doe health administrator "retrieved medical paperwork held at the desk area of the unit." (*See* Doc. 1-1, Complaint at PageID 20, 22). With respect to defendants Maggard, Ms. Moody, and C.O. Moody, plaintiff alleges that these defendants confirmed that contaminated food was served. (*Id.* at 18). The complaint includes no factual allegation that these defendants served plaintiff contaminated food, denied him medical treatment, or retaliated against him. To the extent that plaintiff seeks to hold Sgt. Maggard liable based on his supervisory position or failure to intervene or correct the conduct of others (*see id.*), "§ 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Plaintiff's allegations against these defendants are insufficient to plausibly set forth an actionable claim.

The complaint should also be dismissed as to the ODRC and Aramark. Title 42 U.S.C. § 1983 provides that "[e]very person who, under the color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. A correctional facility is not a "person" subject to suit under 42 U.S.C. § 1983. *See Parker v. Michigan Dept. of Corrs.,* 65 F. App'x 922, 923 (6th Cir. 2003) (holding that

9

Department of Corrections not a "person" under § 1983). *See also, e.g., McGlone v. Warren Corr. Inst.,* No. 1:13cv126, 2013 WL 1563265, at *3 (S.D. Ohio Apr. 12, 2013) (Bowman, M.J.) (Report & Recommendation) (and numerous cases cited therein) (holding that claims against a state prison and the ODRC should be dismissed at the screening stage because "neither the state prison facility nor the state corrections department is an entity capable of being sued under § 1983"), *adopted*, 2013 WL 2352743 (S.D. Ohio May 29, 2013) (Dlott, J.); *see also Hix v. Tennessee Dep't of Corr.,* 196 F. App'x 350, 355-56 (6th Cir. 2006) (and cases cited therein); *Rodgers v. Michigan Dep't of Corr.*, 29 F. App'x 259, 260 (6th Cir. 2002). Accordingly, the complaint should be dismissed against the ODRC.

The complaint should also be dismissed as to Aramark. Plaintiff seeks to hold Aramark liable for its "personel['s] failure to practice good food handling procedures and sanitation." (Doc. 1-1, Complaint at PageID 16). However, plaintiff may not hold Aramark liable based on the conduct of its employees, as the theory of *respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability. *See Iqbal*, 556 U.S. at 676; *Monel,* 436 U.S. 658; *Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Accordingly, to the extent that plaintiff seeks to hold Aramark liable for the conduct of its employees he fails to state a claim up on which relief may be granted. *See, e.g.*, *Kidwell v. Shirmekas*, Case No. 20-3239-SAC, 2021 WL 122849, at *3 (D. Kan. Jan. 13, 2021) ("Under some circumstances, corporations like Aramark may be considered as persons acting under color of state law for purposes of § 1983. But, they may not be held liable based upon respondeat superior—that is, solely because they employ a person who violated the Constitution."). Because plaintiff has failed to allege facts that would subject Aramark to liability

itself, *see Harris v. Aramark Corr. Servs.*, No. 20-3343, 2021 WL 7543808, at *3 (6th Cir. Dec. 27, 2021), Aramark should be dismissed as a defendant to this action.

Accordingly, in sum, plaintiff may proceed with this action against defendants Woods, John/Jane Doe Aramark supervisor, nurse Sky, nurse Rachel, John Doe physician, Jane Doe health-care administrator, Agee, Tatman, Mitchell-Jackson, Bullock, Williams, Cook, Luneke, Back, Macintosh, Wells, Epperson, and Farmer in their individual capacities.

Having found that the remaining claims alleged in the complaint fail to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

**IT IS THEREFORE RECOMMENDED THAT:**

1. The complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A(b), with the exception of plaintiff's claims against defendants Woods, John/Jane Doe Aramark supervisor, nurse Sky, nurse Rachel, John Doe physician, Jane Doe health-care administrator, Agee, Tatman, Mitchell-Jackson, Bullock, Williams, Cook, Luneke, Back, Macintosh, Wells, Epperson, and Farmer in their individual capacities.

2. The Court **DECLINE to exercise supplemental jurisdiction** under 28 U.S.C. § 1367(c)(3) over any state-law claims against the dismissed defendants, and **DISMISS** any such claims **without prejudice.** *See Maze v. Ironton Police Dep't,* No. 1:20-cv-402, 2020 WL 3605865, at *5 (S.D. Ohio July 2, 2020), (Report and Recommendation), *adopted,* No. 1:20-cv-402, 2020 WL 5094843 (S.D. Ohio Aug. 28, 2020).

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Woods, nurse Sky, nurse Rachel, Agee, Tatman, Mitchell-Jackson, Bullock, Williams, Cook, Luneke, Back, Macintosh, Wells, Epperson, and Farmer with costs of service to be advanced by the United States.

Before service may be issued upon the remaining unidentified defendants— John/Jane Doe Aramark supervisor, John Doe physician, and Jane Doe health-care administrator—plaintiff must file a motion to issue service setting forth the identity of the unidentified defendant. Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed defendants through discovery. Plaintiff is advised that no service will be issued on the unnamed defendants unless plaintiff complies with this Order.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date:  May 17, 2023                               s/ *Elizabeth A. Preston Deavers*
                                                  Elizabeth A. Preston Deavers
                                                  United States Magistrate Judge