# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **NORMAN BURKE,** | : | |
| | : | **Case No. 2:22-cv-4421** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **ARAMARK CORRECTIONAL** | : | |
| **SERVICES, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

## STATE DEFENDANTS and INTERESTED PARTY STATE OF OHIO'S DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

Now come Named and Served State Defendants, David Agee, William Harlan, Meredyth McLaughlin-Brewer, David Sandridge, Melissa Sedlitz, Timothy Tatman, Raymond Corbett, Fredrick Epperson, Steven Williams, Case Manager Kearns, ("Defendants[1]"), and interested party State of Ohio[2], by and through undersigned counsel, and respectfully move for Judgment on the Pleadings pursuant to Federal Civil Rule 12(C). Plaintiff's Second Amended Complaint (Doc. 16) fails to state a claim for relief against any Defendant. At minimum, the individual defendants are entitled to qualified immunity. Plaintiff cannot establish that Defendants violated any of Plaintiff's clearly established constitutional rights. A Memorandum in Support of this Motion is attached.

---

[1] Plaintiff names several Aramark Employees and references Jane/John Doe Aramark Employees. Pursuant to Ohio Rev. Code Ann 109.36, the Ohio Attorney General does not represent such an entity or its employees.

[2] Under R.C. § 109.361, the Ohio Attorney General may appear in any civil action in order to protect the interest of the State even though no request for appearance has been made by the officer or employee. Such appearance does not waive personal service and any defenses available at law. Should the Plaintiff perfect service on State Defendants Mitchell-Jackson, Bullock, Back, Aretenz, Allen, Farmer, Koch, Maggard, Penunzio Welch, Stebelton, Luneke, or Wells, the State of Ohio could be statutorily obligated to represent them. This constitutes the State's interest.

Respectfully submitted,

DAVE YOST
Ohio Attorney General


*s/Marcy A. Vonderwell*
MARCY VONDERWELL (0078311)
MATTHEW P. CONVERY (0095704)
Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
P: 614-644-7233/F: 866-473-4883
Marcy.Vonderwell@OhioAGO.gov
Matthew.Convery@OhioAGO.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ iv

MEMORANDUM IN SUPPORT ......................................................................................................... 1

I.     Introduction and Procedural History ........................................................................................ 1

II.    Statement of Facts .................................................................................................................... 2

III.   Law and Argument .................................................................................................................. 7

    A.  Standard of Review .......................................................................................................... 7

    B.  Plaintiff's Claims Fail Because He Does Not Describe Defendants' Personal
       Involvement In The Purported Unconstitutional Activities ............................................. 8

       1.  Plaintiff fails to state a claim against Defendant David Agee ................................. 10

       2.  Plaintiff fails to state a claim against Defendant Epperson ..................................... 11

       3.  Plaintiff fails to state a claim against either Defendant Harlan or Defendant Corbett ...... 12

       4.  Plaintiff fails to state a claim against Defendant McLaughlin ................................. 13

       5.  Plaintiff fails to state a claim against Defendant Meyers-Carnes [served as Kearns] ....... 14

       6.  Plaintiff fails to state a claim against Defendants Murray, Allen, or Aretenz ............... 14

       7.  Plaintiff fails to state a claim against Defendants Williams, Captain Jason Back;
          Chief Unit Manager Rodney Macintosh, C.O. John Wells ...................................... 15

       8.  Plaintiff fails to state a claim against Defendants Sandridge and Sedlitz ................. 15

    C.  Plaintiff has Failed to Allege the Necessary Pattern of Prior Constitutional Violation
       to Support any Theories of "Tolerance" or "Failure to Train" Claim ..................................... 16

    D.  Plaintiff Fails to Allege a Claim of *Deliberate Indifference* against Defendants as a
       Matter of Law ................................................................................................................. 18

    E.  Plaintiff Fails to Sufficiently State a Plausible Retaliation Claim Against Defendants .......... 21

       1.  Plaintiff's Alleged Protected Conduct ..................................................................... 22

       2.  The Alleged Adverse Action Would Not Deter an Incarcerated Person of "Ordinary
          Firmness" from Continuing to Engage in the Protected Conduct .................................. 22

3.   Plaintiff's Allegation Regarding the Motivation of Being Locked Down Fails to Establish Any Possible Nexus to His Alleged Protected Conduct of Seeking Medical Services ...................................................................................... 24

F.   The Eleventh Amendment Bars Plaintiff's Against Defendants In Their Official Capacities ..................................................................................................... 25

G.   Plaintiff's Generalized Equal Protection Claim Fails as a Matter of Law ............................. 26

H.   Defendants Have Qualified Immunity From this Civil Action ............................................. 28

IV.   CONCLUSION ..................................................................................................................... 30

CERTIFICATE OF SERVICE ........................................................................................................ 30

iv

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amersbach v. City of Cleveland,*
  598 F.2d 1033 (6th Cir. 1979) ...................................................................................7

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011)..................................................................................................28

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................................................7, 12

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir. 2001) .................................................................................10

*Balcar v. Smith,*
  2017 U.S. App. LEXIS 16462 (6th Cir.) .................................................................20

*Bass v. Robinson,*
  167 F.3d 1041 (6th Cir. 1999) ............................................................................15, 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 555 (2007)....................................................................................................7

*Bell v. Johnson,*
  308 F.3d 594 (6th Cir. 2002) ...................................................................................22

*Bellamy v. Bradley,*
  729 F.2d 416 (6th Cir. 1984) ...................................................................................18

*Cabotage v. Ohio Hosp. for Psychiatry, LLC,*
  No. 2:11cv50, 2012 U.S. Dist. LEXIS 105130, 2012 WL 3064116
  (S.D. Ohio July 27, 2012) .........................................................................................13

*Center for Bio-Ethical Reform, Inc. v. Napolitano,*
  648 F.3d 365 (6th Cir., 2011) .............................................................................26, 27

*Coleman v. Bowerman,*
  474 F. App'x 435 (6th Cir. 2012) .............................................................................24

*Combs v. Wilkinson,*
  315 F.3d 548 (6th Cir. 2002) ...............................................................................13, 14

*Connick v. Thompson,*
  563 U.S. 51 (2011)....................................................................................................16

*Cook v. Campbell*,
No. 98-5202, 1999 U.S. App. LEXIS 4699 (6th Cir. Mar. 16, 1999) ......................................23

*Correa v. Cullum*,
No. 1:17cv300, 2018 U.S. Dist. LEXIS 72823 (S.D.Ohio May 1, 2018)...........................19, 20

*Cox v. Kentucky Dep't of Transp.*,
53 F.3d 146 (6th Cir. 1995) ....................................................................................................25

*Ctr. For Bio-Ethical Reform, Inc. v. City of Springsboro*,
477 F.3d 807 (6th Cir. 2007) ............................................................................................22, 23

*Cunningham v. Jones*,
567 F.2d 653 (6th Cir. 1977) ..................................................................................................20

*Cutsinger v. Louisville Metro Dep't of Corr.*,
No. 3:19-cv-P254, 2019 U.S. Dist. LEXIS 120389 (W.D.Ky. July 19, 2019).......................19

*D'Ambrosio v. Marino*,
747 F.3d 378 (6th Cir. 2014) ..................................................................................................16

*Davis v. Mich. Dep't of Corr. Bureau of Health Care Servs.*,
No. 2:13-cv-253, 2013 U.S. Dist. LEXIS 128740 (W.D. Mich. Sep. 10, 2013) .......................8

*Denkins v. Mohr*,
No. 2:13-CV-00584, 2014 U.S. Dist. LEXIS 120891 (S.D.Ohio Aug. 29,
2014) ..........................................................................................................................................8

*Ellis v. Mohr*,
No. 1:13 CV 1058, 2017 U.S. Dist. LEXIS 152059 (N.D.Ohio Sep. 19, 2017) .....................19

*Estelle v. Gamble*,
429 U.S. 97 (1976)..............................................................................................................12, 14

*Farrell v. Thompson*,
No. 3:17cv692, 2018 U.S. Dist. LEXIS 15246, 2018 WL 662310 (W.D. Ky.
Jan. 1, 2018)..............................................................................................................................13

*Frazier v. Michigan*,
41 Fed. Appx. 762 (6th Cir. 2002)............................................................................................8

*Gilmore v. Corr. Corp. of Am.*,
92 F. App'x 188 (6th Cir. 2004) .....................................................................................9, 10, 11

*Glover v. Boardman*,
No. 1:18 CV 1134, 2018 U.S. Dist. LEXIS 215290 (N.D. Ohio Dec. 21, 2018)....................27

vi

*Gordon v. Van Schoyck*,
No. 3:17-CV-721, 2020 WL 906346 (N.D. Ohio Feb. 25, 2020)............................................23

*Gregory v. Shelby Cnty.*,
220 F.3d 433 (6th Cir. 2000) ...............................................................................................7

*Grinter v. Knight*,
532 F.3d 567 (6th Cir. 2008) ..............................................................................................12

*Gutierrez v. Lynch*,
826 F.2d 1534 (6th Cir. 1987) ............................................................................................24

*Hafer v. Melo*,
502 U.S. 21 (1991)................................................................................................................8

*Hall v. Medical College of Ohio at Toledo*,
742 F.2d 299 (6th Cir. 1984) .............................................................................................25

*Harbin-Bey v. Rutter*,
420 F.3d 571 (6th Cir. 2005) .............................................................................................24

*Hardy v. Adams*,
No. 16-2055, 2018 U.S. App. LEXIS 9471, 2018 WL 3559190
(6th Cir. Apr. 13, 2018) .....................................................................................................22

*Harlow v. Fitzgerald*,
457 U.S. 800 (1972)............................................................................................................27

*Hensley v. Blount Cty. Jail*,
No. 3:15-CV-00019, 2018 U.S. Dist. LEXIS 41874, 2018 WL 1324138
(E.D. Tenn. Mar. 14, 2018).................................................................................................27

*Johnson v. Unknown Dellatifa*,
357 F.3d 539 (6th Cir. 2004) .............................................................................................23

*Kennedy v. Tallio*,
*20 F. App'x 469* (6th Cir. 2001)........................................................................................23

*Kesterson v. Moritsugu*,
149 F.3d 1183, No. 96–5898, 1998 WL 321008 (6th Cir. June 3, 1998)
(unpublished table decision) ..............................................................................................10

*State ex rel. Larkins v. Wilkinson*,
79 Ohio St.3d 477, 1997-Ohio-139.....................................................................................14

*Leary v. Daeschner*,
349 F.3d 888 (6th Cir. 2003) .............................................................................................18

*Lumbard v. Lillywhite*,
    815 F.App'x 826 (6th Cir. 2020) ...................................................................................21

*Mackey v. Cleveland State Univ.*,
    837 F. Supp. 1396 (N.D. Ohio 1993).............................................................................25

*Malley v. Briggs*,
    475 U.S. 335 (1986)......................................................................................................27

*Marcilis v. Twp. Of Redford*,
    693 F.3d 589 (6th Cir. 2012) .............................................................................9, 10, 11, 12

*Meier v. County of Presque Isle*,
    376 F. App'x 524 (6th Cir. 2010) .............................................................................13, 14

*Moniz v. Cox*,
    512 F. App'x 495 (6th Cir.) *cert. denied*, 134 S. Ct. 149 (2013)................................8

*Moore v. Morgan*,
    No. 1:16-cv-655, 2019 U.S. Dist. LEXIS 233063 (S.D.Ohio Sep. 6, 2019) ...........................18

*Mullinex v. Luna*,
    577 U.S. 7 (2015)..........................................................................................................28

*Pearson v. Callahan*,
    555 U.S. 223 (2009)......................................................................................................28

*Pilgrim v. Littlefield*,
    92 F.3d 413 (6th Cir. 1996) ...........................................................................................8

*Radvansky v. City of Olmsted Falls*,
    395 F.3d 291 (6th Cir. 2005) ........................................................................................26

*Rayfield v. City of Grand Rapids*,
    768 F. App'x 495 (6th Cir. 2019) .................................................................................17

*Reid v. City of Detroit*,
    2020 U.S. Dist. LEXIS 183982, 2020 WL 5902597 (E.D. Mich. Oct. 5, 2020).....................12

*Reilly v. Vadlamudi*,
    680 F.3d 617 (6th Cir. 2012) ...............................................................................8, 12, 28

*Rondigo, L.L.C. v. Township of Richmond*,
    641 F.3d 673 (6th Cir. 2011) ........................................................................................26

*Russo v. City of Cincinnati*,
    953 F.2d 1036 (6th Cir. 1992) .......................................................................................8

viii

*Salehpour v. Univ. of Tenn.*,
    150 F.3d 199 (6th Cir. 1998) ........................................................................................8

*Saucier v. Katiz*,
    533 U.S. 194 (2001)...................................................................................................28

*Scarbrough v. Morgan County Bd. of Educ.*,
    470 F.3d 250 (6th Cir. 2006) ...............................................................................26, 27

*Schrader v. Collins*,
    No. 97-4471, 1998 U.S. App. LEXIS (6th Cir. Nov. 23, 1998) ................................19

*Sims v. Michigan Dept. of Corr.*,
    23 F.App'x 214 (6th Cir.2001) .............................................................................15, 20

*Skinner v. Bolden*,
    89 F. App'x 579 (6th Cir. 2004) ...............................................................................24

*Smith v. Campbell*,
    250 F.3d 1032 (6th Cir. 2001) ..................................................................................24

*Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    479 F.2d 478 (6th Cir. 1973) ......................................................................................7

*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999) (en banc) .........................................................21, 22, 23

*Thomas v. City of Chattanooga*,
    398 F.3d 426 (6th Cir.2005) ......................................................................................16

*Thomas v. Univ. of Tennessee Health Science Ctr.*,
    No. 17-5708, 2017 U.S. App. LEXIS 24714 (6th Cir. Dec. 6, 2017).......................13

*Thompson v. Cty. of Medina*,
    29 F.3d 238 (6th Cir.1994) .......................................................................................19

*United Mine Workers v. Illinois State Bar Ass'n*,
    389 U.S. 217 (1967).............................................................................................21, 22

*Washington v. Davis*,
    426 U.S. 229 (1976)...................................................................................................26

*Wesley v. Campbell*,
    779 F.3d 421 (6th Cir. 2015) ....................................................................................28

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989).....................................................................................................25

*Williams v. Bates*,
   1994 U.S. App. LEXIS 34260, No. 93-2045, 1994 WL 677670
   (6th Cir. Dec. 2, 1994) ................................................................................24

*Williams v. CitiMortgage, Inc.*,
   498 F. App'x 532 (6th Cir. 2012) ................................................................17

*Wilson-Jones v. Caviness*,
   107 F.3d 358 (6th Cir. 1997) ......................................................................25

*Wolfel v. Morris*,
   972 F.2d 712 (6th Cir. 1992) ......................................................................25

*Wood v. Eubanks*,
   25 F.4th 414 (6th Cir. 2022) ......................................................................22

## Statutes, Codes & Rules

42 U.S.C. § 1983.............................................................................. *passim*

Civ.R. 12(C)..................................................................................... *passim*

Ohio Administrative Code ..................................................................14

## Other Authorities

First Amendment ...............................................................................21

Eighth Amendment .................................................................... *passim*

Eleventh Amendment.........................................................................25

Fourteenth Amendment ...............................................................26, 27

HIPAA ...............................................................................................13

Equal Protection Clause.....................................................................26

## MEMORANDUM IN SUPPORT

While Defendants dispute the facts as asserted by Plaintiff in his Second Amended Complaint (Doc. 16), for the purposes of this motion, even taking the facts as alleged by Plaintiff as asserted against the Defendants, Plaintiff's claims fail as a matter of law. Critically, Plaintiff fails to allege facts that, if true, would entitle him to relief. At a minimum, Defendants named in their individual capacity are entitled to qualified immunity regarding Plaintiff's claims. Therefore, Plaintiff's claims must be dismissed and Defendants are entitled to judgment in their favor.

## I.    Introduction and Procedural History

Plaintiff, Norman Burke is currently an Incarcerated Person (IP) housed at Chillicothe Correctional Institution (CCI). At all relevant times in reference to the allegations in Plaintiff's Second Amended Complaint, he was an IP housed at Warren Correctional Institution ("WCI") (Doc. 16). On December 19, 2022, Plaintiff filed a motion for leave to proceed in forma pauperis. (Doc. 1).  Leave was granted on May 17, 2023 (Doc. 4), and a civil rights lawsuit under 42 U.S.C. § 1983 was filed against Aramark Correctional Services; Jane and John Doe Aramark Supervisor; Mr. Woods; Wanza Mitchell-Jackson, Ohio Department of Rehabilitation and Correction ("ODRC") Isaac Bullock; Sgt. Maggard; Unity Manager Williams; Unit Manager Macintosh; Case Manager Kearns; Captain David Agee; Captain Back; Lt. Tatman; Lt. Saunders "Sandman", C.O. Cook; C.O. Wells; C.O. Ms. S; Ms. Morris; Health Care Administrator; Nurse Practitioner Sky; Nurse Practitioner Rachel; CO Penunzio; Deputy Warden Luneke; CO Moody; CO Eperson; CO Farmer; Marc Bratton; and Karen Stanforth (Doc. 5).  On July 5, 2023, Plaintiff filed a Motion to Amend his Complaint (Doc. 10; Doc. 11).  On November 2, 2023, Plaintiff filed a Second Amended Complaint (Doc. 16).  By Order, this Court granted the Motion to Amend the Complaint and vacated the Report and Recommendation (Doc. 6).  (See Doc. 18).

1

On November 2, 2023, Plaintiff filed his Second Amended Complaint against Aramark Correctional Services, LLC, Jane/John Doe "Aramark Supervisor," Ms. Woods; Wanza Mitchell –Jackson, Isaac Bullock, Sgt. J. Maggard, Steven Williams, Rodney Macintosh, Case Manager Kearns, Captain David Agee, Captain Jason Back, Lt. Tim Tatman, Lt. David Sandridge "Sandman", "C.O Koch", C.O John Wells, C.O Ms. Sedlitz, Meredyth McLaughlin, Natasha Aretenz, Rachel Allen, Dr. William Harlan, Dr. Raymond Corbett, C.O Ms. Kimberly Panunzio, Deputy Warden Douglas Luneke, C.O Fredrick Epperson, C.O Larry Farmer, Lt. Kayla Stebelton, and Deputy Warden Robert Welch. (Doc 16).  On June 3, 2024, Defendants David Agee, William Harlan, Meredyth McLaughlin-Brewer, David Sandridge, Melissa Sedlitz, Timothy Tatman, and interested party State of Ohio filed their Answer to Plaintiff's Second Amended Complaint. (Doc. 37).  On June 13, 2024, Defendants Raymond Corbett, Fredrick Epperson, Kearns, Steven Williams and interested party State of Ohio filed their Answer to Plaintiff's Second Amended Complaint. (Doc. 46).  These same Defendants now file the instant motion for judgment on the pleadings pursuant to Civ.R. 12(C).

## II.     Statement of Facts

Plaintiff alleges that on November 27, 2021, Defendant Aramark, an unidentified Aramark's Supervisor (Jane/John Doe), Manager Woods, and non-specific ODRC Correctional Officers "knowingly served or allowed to be served contaminated food to Plaintiff * * * from a contaminated trash can." (Doc. 16, PageID 206). Later that night, he suffered an upset stomach with cramping pains, severe diarrhea and vomiting.  *Id.*  He alleges to have vomited twice the next day.  *Id.* He alleges the symptoms are a result of Defendants Aramark Correctional Service LLC personnel and unidentified ODRC Correctional Officers failure to practice good food handling procedures and sanitation on November 27, 2021.  *Id.*

2

Plaintiff alleges that he continued to experience abnormal bowel movements, pain in his stomach and eventually informed Medical in writing that he needed to be seen.  *Id*. at PageID207. Plaintiff alleges that when he told Ms. Panunzio of his condition, she told him to kite medical.  *Id.*

On December 1, 2021, Lt. Kayla Stebelton reviewed the video footage of the Aramark incident and completed a report in which she found that on November 27, 2021, at 6:20 p.m., IP Smith dumped food into the trash can.  At 6:24 p.m., Aramark Manager Woods was observed using a pitcher and scooping the food out of the trash can into an empty container.  IP Smith is then observed putting the container into the serving line, where the food from the trash can is served to inmates.  At 6:26 p.m., a rear food service porter is observed dumping dust into the same trash can.  At 6:27 p.m. Aramark Woods brought a second container near the trash can for IP Burton to scoop more food from the trash can.  Aramark Woods stirred water into the food in the container and at 6:30 p.m. IP Burton took the food to the main chow hall to be served.  (Doc. 16, PageID 207).

Plaintiff alleges that although Lt. Stebelton was aware of his housing unit being exposed to contaminated food, she failed to inform Plaintiff to seek medical attention for food poisoning. By doing so, Plaintiff contends that she acted with deliberate indifference to his health and safety. (Doc. 16, PageID  207-208).  He further alleges that she was deliberately indifferent to his health and safety because she "allowed W.C.I. administration to falsely quarantine the Plaintiff when he sought medical attention for his illness. . ." and "attempted to cover up the fact that Plaintiff has been intentionally food poisoned."  *Id.* at PageID 208.

Plaintiff alleges that Deputy Warden Robert Welch was deliberately indifferent to Plaintiff's health and safety when he did not order WCI administration to escort the Plaintiff to medical immediately upon knowing of the incident on December 3, 2021. (Doc. 16, PageID  at

3

208).  He alleges that although he sent in multiple requests for medical attention, he was not seen in medical until December 5, 2021.  He further alleges that because Deputy Warden Welch failed to release the names, times, and dates of when Plaintiff was exposed to and ate contaminated food, it violated his constitutional rights to be free from Cruel and Unusual Punishment and Equal Protection.  *Id.* at PageID 208.

Plaintiff alleges that two incarcerated individuals, Edward Smith and Richard Burton, tried to stop the food from being served but were taken to the hole by Lt. Sandridge and Ms. Sedlitz for speaking up.  (Doc. 16, PageID  at 208).  He alleges that Lt. Sandridge and Ms. Seidlitz were aware of Ms. Woods' actions, but were deliberately indifference when they allowed the Plaintiff to eat the contaminated food.  *Id.*

Plaintiff alleges that on December 2, 2021, he filed an informal complaint, reference no. WCI122 1000207 regarding the events of November 27, 2021.  (Doc. 16, PageID  209).  The informal complaint, in its entirety, states:

> Late Sat Eve, I started to feel sick in my stomach.  The chow hall, saw it fit to feed us beans that were thrown on the floor. Not only is this against what rights we do have, I find it inhumane. Im still awaiting medical attention. Somebody needs to be held responsible for this conduct. Do I need to contact my attorney, or can we depend on yall to make this right. It makes no sense..were not animals. Theres a couple of us in my unit that are feeling sick. This is unacceptable.. [errs in original].

(Doc. 16, PageID 234).  On December 3, 2021, Inspector Bullock replied that the issue had been verified and addressed and that corrective action had been taken.  He then advised Plaintiff to submit a Health Services Request for his medical concerns.  *Id.*  Plaintiff then responded back that he had been on quarantine for three days (December 6, 2021 until December 9, 2021).  *Id.* at PageID 209; 234.

Plaintiff alleges that between November 27, 20221 [sic] through December 9, 2021, Stg. Maggard reviewed the incident with Plaintiff and then "knowingly and wantonly disregarded the

4

plaintiffs [sic] health and safety, when he allowed without prevention or intervention W.C.I administration and staff to retaliate, intimidate, and harass the Plaintiff for seeking Medical attention" and "when he did not seek medical attention for the inmates in his dorm after receiving multiple complaints from the inmate population about being sick from eating contaminated food." (Doc. 16, PageID 209).

Plaintiff alleges that ODRC's medical staff refused to see him in order to cover up that he was fed contaminated food.  (Doc. 16, PageID 210).  Further, they violated his right to privacy by providing his name and health concerns to the Corrections Officers, Captains and Lieutenants.  *Id.*

Plaintiff alleges that on December 5, 2021 at approximately 6:30 a.m., C.O. Koch told Plaintiff he could not leave his cell until he had spoken with the White Shirts.  (Doc. 16, PageID 211).  Health-Care Administrator Meredyth McLaughlin violated HIPPA and ODRC Policy 07-ODR-11 by informing staff of his protected health information.  *Id.*

Plaintiff alleges that David Agee retaliated against him by sending Lt. Tatman, who on December 5, 2021, yelled and screamed at the inmates and tried to intimidate the inmates from going to Medical or reporting what they were experiencing.  (Doc. 16, PageID 211).  He further alleges a few hours later, he was escorted to and saw Medical, where Nurse Sky Murray and Nurse Rachel Allen examined him.  *Id.* at 212.  He alleges that they both violated ODRC Policy 68-MED-04 because they failed to collect stool and food samples.  Further, Nurse Natasha Aretenz and Nurse Allen made jokes about the situation instead of providing care or assistance.  *Id.*

Plaintiff alleges that he was placed in quarantine as punishment for speaking up.  (Doc. 16, PageID 212).  He alleges that C.O. Fredrick Epperson and C.O. Larry Farmer failed their duties and were deliberately indifference to Plaintiff's health and safety when they disregarded multiple requests to call medical, failed to allow Plaintiff out of his cell for more than 15 minutes per day

5

to shower, make calls, and check his communications, or make his meals. *Id.* at 212-213.

Plaintiff alleges that while he was quarantined, he was restricted from generating new ICRs as access to the J-pay was restricted. He also alleges that C.O. Panunzio and Ms. Kearns stood by and watched the mistreatment. (Doc. 16, PageID 214).

Plaintiff acknowledges that on December 6, 2021, he was escorted to Medical a second time and saw either Dr. Harlan or Dr. Corbett. He claims that whichever medical provider he saw was deliberately indifference because that provider failed to diagnose Plaintiff and allowed his pain and misery to continue, and kept him on quarantine status until December 9, 2021. (Doc. 16, PageID 215). He also alleges that Ms. Mitchell-Jackson refused to talk to him when she visited medical. *Id.*

Plaintiff alleges that sometime between December 09, 2021,and January 10, 2022, Deputy Warden Luneke held a town hall meeting, told the inmates that the doors would remain closed for at least 8 weeks, and refused to discuss the food poisoning incident. (Doc. 16, PageID 216). Also attending were Captain Jason Back, Unit Manager Steven Williams, Chief Unit Manager Rodney Macintosh, C.O John Wells, and several other C.O.'s. During that same time frame, Health-Care Administrator McLaughlin and/or an Employee from Medical retrieved medical paperwork from unit 1A's desk while C.O. Morris was working.

Plaintiff claims that multiple defendants retaliated against him by locking him down, not answering questions, not allowing recreation for more than 15 minutes per day, withholding mail, and not sending out mail. (Doc. 16, PageID 216-217). Plaintiff was transferred to Chillicothe Correctional Institution on January 10, 2022. *Id.* at 216.

Plaintiff claims that Lt. Bullock restricted him from being permitted to use the kiosk, restricted his access to grievance forms, and was indifferent to retaliation and harassment he

experienced at the hands of others. (Doc. 16, PageID 217). Plaintiff is seeking Five million dollars ($5,000,000) in compensatory, punitive and nominal damages.

## III. Law and Argument

### A. Standard of Review

Plaintiff's Complaint fails to state a claim for relief against any ODRC Defendant. A motion for judgment on the pleadings attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979). In ruling upon such motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

Although a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000).

This Court must determine whether the complaint has "'enough facts to state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. 555 at 570. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. 662 at 678.

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Although a complaint need not contain 'detailed factual

7

allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). Allegations in a pro se complaint are construed liberally, *Moniz v. Cox*, 512 F. App'x 495, 497 (6th Cir.) *cert. denied*, 134 S. Ct. 149 (2013), but even "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Here, Plaintiff's Complaint suggests violations of the federal Constitution as well as state law alleges, but does not identify any specific legal theory under which he seeks to proceed. (*See* Doc. 16).  Even under a liberal reading of the Complaint, Plaintiff fails to allege sufficient facts to proceed against any named ODRC defendant under any theory.

**B.      Plaintiff's Claims Fail Because He Does Not Describe Defendants' Personal Involvement In The Purported Unconstitutional Activities**

A successful claim under § 1983 must identify a right secured by federal law and the deprivation of that right by a person acting under color of state law. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).  It is well-settled that to state a cognizable claim under § 1983, a plaintiff must allege some personal involvement by each of the named defendants.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Salehpour v. Univ. of Tenn.*, 150 F.3d 199, 206 (6th Cir. 1998). "Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints." *Davis v. Mich. Dep't of Corr. Bureau of Health Care Servs.*, No. 2:13-cv-253, 2013 U.S. Dist. LEXIS 128740, at *11-12 (W.D. Mich. Sep. 10, 2013). "Merely naming a person as a defendant without alleging how the named defendant was involved in any constitutional violation," the Magistrate Judge explained, renders even a pro se complaint "subject to dismissal." *Denkins v. Mohr*, No. 2:13-CV-00584, 2014 U.S. Dist. LEXIS 120891, at *5 (S.D.Ohio Aug. 29, 2014). *See also Frazier*

8

*v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002) (stating "Frazier failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"); *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing as frivolous a complaint against supervisory personnel and non-supervisory staff of a correctional service center where the complaint failed to allege how any named defendant was involved in alleged constitutional violations).

Plaintiff acknowledges that Defendant Woods, a manager employed by Aramark services and two inmates fed him the contaminated food which allegedly caused him food poisoning. (See Doc. 16, PageID 206). Plaintiff does not allege that any of the ODRC Defendants fed him contaminated foods. (See generally, Doc. 16). At best, Plaintiff alleges that only Defendants LT Sandridge and Ms. Sedlitz were aware of the contaminated food and allowed him to eat it anyway. (Doc. 16, PageID 208). The remainder of the ODRC Defendants simply failed to notify Plaintiff that he had been exposed to contaminated foods in a timely manner. *Id.*

Plaintiff's failure to allege any degree of facts that if true would entitle Plaintiff to relief, requires that his Complaint be dismissed. Critically, "[a]llegations that are not attributable to any individual defendant are not sufficient to sustain a claim under §1983. *See Marcilis v. Twp. Of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). Based upon Plaintiff's failure to attribute any allegations to any individual Defendants, this Honorable Court should dismiss Plaintiff's Complaint.

### 1. Plaintiff fails to state a claim against Defendant David Agee.

As it applies to Plaintiff's claims against Correctional Officer Captain David Agee, Plaintiff asserts that Captain Agee was provided with confidential medical information (Doc. 16, PageID 211) and that Captain Agee retaliated against Plaintiff by sending Lt. Tatman to his unit.

9

(Doc. 16, PageID 211).  He then alleges that Captain Agee retaliated against him by locking down the unit and blaming his symptoms on COVID-19.  *Id.* at PageID 212.  He also alleges that "Defendant's [sic] Lt. Tim Tatman, David Agee, Isaac Bullock and other's [sic] each intentionally lied in responses to the informal complaints filed by Plaintiff, attempting to cover up for Aramark Correctional Services LLC, Lt. Sandridge and C.O. Ms. Sedlitz that allowed the Plaintiff to eat the contaminated food served." *Id.* at 216.  These allegations, even if true, are not sufficient to state a § 1983 claim against Captain Agee. A complaint fails where a plaintiff "did not allege that particular defendants performed the acts that resulted in a deprivation of [plaintiff's] constitutional rights." *Kesterson v. Moritsugu*, 149 F.3d 1183, No. 96–5898, 1998 WL 321008, at *4 (6th Cir. June 3, 1998) (unpublished table decision); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."). Simply put, Plaintiff attempts to cure a Complaint that was too factually thin to survive screening by attributing broad undescriptive allegations to all Defendants. This tactic, however, fails as a matter of law and demands judgment in Defendants favor.

### 2. Plaintiff fails to state a claim against Defendant Epperson

Plaintiff's allegation against Defendant Epperson fail to state a claim upon which relief can be granted.  Plaintiff alleges that C.O. Epperson was "deliberate indifferent to the Plaintiff health and safety when [he] disregarded multiple requests from the Plaintiff to call medical because he was extremely sick to the point he couldn't make it out of the bed." (Doc. 16, PageID  212-213). However, Plaintiff acknowledges that WCI Staff advised to contact medical and then subsequently saw medical on December 5 and 6, 2021. *Id.*

10

Plaintiff claims that Defendant Epperson was deliberately indifferent to Plaintiff's health and safety when he refused to provide the names of the staff that was directly responsible for his illness. *Id.* at 213. However, there is no constitutional right to obtain the names of staff members allegedly involved in allowing Plaintiff to ingest contaminated food. Moreover, Plaintiff fails to allege any connection, nor does the law support one, concerning how failing to provide names equates with Defendant Epperson being deliberately indifferent to Plaintiff's serious medical needs. Even if true, Plaintiff's allegations fail to state a claim upon which entitles him to relief.

Plaintiff alleges that Epperson was deliberately indifferent to Plaintiff's health and safety when he only allowed Plaintiff out of his cell for 15 minutes a day. *Id.* However, Plaintiff also has stated that Plaintiff was in quarantine from December 6, 2021, until December 9, 2021 due to Captain David Agee ordering the same. *Id.* at PageID 212. Further, Plaintiff notes that while he was out, he was able to shower, make phone calls, utilize the kiosk and make meals. *Id.* at 213. Plaintiff does not have a constitutional right to be outside of his cell while he is being quarantined. Like the nondescriptive allegations against other Defendants, Plaintiff fails to cite conduct specific to Defendant Epperson that is sufficient to state a § 1983 claim. *See Marcilis* 693 F.3d at 596.

### 3. Plaintiff fails to state a claim against either Defendant Harlan or Defendant Corbett

Plaintiff alleges that on Monday, December 6, 2021, he saw either Dr. William Harlan **or** Dr. Raymond Corbett. (Doc. 16, PageID 215). He then alleges that whichever doctor he saw was deliberately indifferent to the Plaintiff health and safety when he failed to diagnose Plaintiff with food poisoning, failed to provide care, and only quarantined Plaintiff. *Id.* These allegations, even if true are not sufficient to set forth a § 1983 claim of deliberate indifference. Critically, even assuming Plaintiff's allegation does amount to a constitutional violation – which it does not – Plaintiff fails to identify the Defendant that he attributes the alleged conduct. Federal notice

11

pleading requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him. *Iqbal*, 556 U.S. at 678; *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). The collective acts of defendants cannot be ascribed to each individual defendant. *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted). A plaintiff suing several defendants must describe in the complaint how each defendant violated his or her rights. "The Sixth Circuit 'has consistently held that damage alleges against government officials arising from alleged violations of constitutional rights must allege…facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, 2020 U.S. Dist. LEXIS 183982, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original).

Plaintiff's claims fail even if he was able to provide substantive facts applicable to a specific defendant. As long as some treatment was provided, the failure to perform the treatment desired by the incarcerated individual does not constitute cruel and unusual punishment but is at most medical malpractice recognizable in the state courts. *Estelle v. Gamble*, 429 U.S. 97, 98 (1976). Like the nondescriptive allegations against other Defendants, Plaintiff fails to cite conduct specific to Dr. William Harlan and Dr. Raymond Corbett that are sufficient to state a § 1983 claim. *See Marcilis* 693 F.3d at 596. Instead, Plaintiff alleges he was seen by either physician, but not properly diagnosed with food poisoning. This allegation, even if true, does not entitled Plaintiff to relief. As such, Defendants are entitled to judgment in their favor.

### 4. Plaintiff fails to state a claim against Defendant McLaughlin

Plaintiff alleges the Health-Care Administrator Meredyth McLaughlin violated HIPPA and ODRC Policy 07-ORD-11 by informing the C.O.s and Staff of Plaintiff's health information

12

without his consent. (Doc. 16, PageID 211). However, HIPAA does not create a private right of action.[3] *See Thomas v. Univ. of Tennessee Health Science Ctr.*, No. 17-5708, 2017 U.S. App. LEXIS 24714, at \*1 (6th Cir. Dec. 6, 2017). Further, the failure to follow prison protocols does not create a constitutional violation. *Meier v. County of Presque Isle*, 376 F. App'x 524, 529 (6th Cir. 2010) (noting than an awareness of a policy and the failure to comply with it "is not a per se constitutional violation"). Therefore, these allegations, even if true are not sufficient to allege a § 1983 claim against HCA McLaughlin.[4]

### 5. Plaintiff fails to state a claim against Defendant Meyers-Carnes [served as Kearns]

Plaintiff alleges that Case Manager Renee Meyers-Carnes [served as Kearns],

> "was deliberate indifferent to the Plaintiff's health and safety. Defendants [sic] Ms. Kearn was presented with complaints about the conduct of Aramark and ODRC's staff. Defendants [sic] Ms. Kearns was informed of inmates being harassed and tormented, due to them writing health service request forms, and writing their informal complaints regarding Aramark and ODRC staff. Defendant Mr Kearns and C.O [sic] by idle and watch as the mistreatment took place."

(Doc. 16, PageID 214). Plaintiff further asserts,

> "Defendant Ms. Kearns could have prevented these violations from occurring within their housing unit. Plaintiff was harassed, bullied, and intimidated until he was transferred to Chillicothe Correctional Institution. Defendants [sic] Ms. Kearns witnessed the Plaintiff's false quarantine, witnessed the actions of their co-workers."

*Id*. These allegations, even if true, fail to assert a § 1983 claim. *Combs v. Wilkinso*n, 315 F.3d 548, 558 (6th Cir. 2002) (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)

---

[3] *See also Cabotage v. Ohio Hosp. for Psychiatry, LLC,* No. 2:11cv50, 2012 U.S. Dist. LEXIS 105130, 2012 WL 3064116, at \*3-4 (S.D. Ohio July 27, 2012) (Deavers, MJ) (collecting cases) ("HIPAA creates neither an express nor an implied cause of action for private citizens to enforce its terms"); *Farrell v. Thompson*, No. 3:17cv692, 2018 U.S. Dist. LEXIS 15246, 2018 WL 662310, at \*1 (W.D. Ky. Jan. 1, 2018) (McKinley, Chief DJ).

[4] *See also Cabotage v. Ohio Hosp. for Psychiatry, LLC,* No. 2:11cv50, 2012 U.S. Dist. LEXIS 105130, 2012 WL 3064116, at \*3-4 (S.D. Ohio July 27, 2012) (Deavers, MJ) (collecting cases) ("HIPAA creates neither an express nor an implied cause of action for private citizens to enforce its terms"); *Farrell v. Thompson*, No. 3:17cv692, 2018 U.S. Dist. LEXIS 15246, 2018 WL 662310, at \*1 (W.D. Ky. Jan. 1, 2018) (McKinley, Chief DJ).

13

("Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior.").

### 6. Plaintiff fails to state a claim against Defendants Murray Allen, or Aretenz[5].

Plaintiff alleges that ANP Murray and ANP Allen, "refused to provide medication or to recommend transport to an outside hospital to be checked by a doctor, regarding bacteria or other infection." (Doc. 16, PageID 212). Moreover, he alleges that these Defendants violated ODRC Policy 68-MED-04 by not collecting his stool sample and or food samples for examination by local health department." *Id.* He alleges that Nurse Practitioner Natasha Aretenz laughed and made jokes about inmates being fed out of trash cans rather than providing medical care. *Id.* These allegations, even if true, fail to state a § 1983 violation. The failure to follow prison protocols does not create a constitutional violation. *Meier,* 376 F. App'x at 529. *See also*, *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 1997-Ohio-139, 683 N.E.2d 1139, citing *Sandin v. Conner*, 515 U.S. 472, 481-482 (1995) (Prison regulations, including those contained in the Ohio Administrative Code, "are primarily designed to guide correction officials on prison administration rather than confer rights on inmates.") Further, the failure to perform an X-ray or to use additional diagnostic techniques does not constitute cruel and unusual punishment but is at most medical malpractice recognizable in the state courts. *Estelle,* 429 U.S. at 98. Finally, assuming Plaintiff's allegations to be true, rude comments by ODRC staff, while unprofessional, do not raise to the level of constitutional violations.

---

[5] As of the date of this filing, Defendant Aretenz has not been served. However, the State of Ohio could be statutorily obligated to represent them should they be served. This constitutes the State's interest

14

**7. Plaintiff fails to state a claim against Defendants Williams, Captain Jason Back; Chief Unit Manager Rodney Macintosh, C.O. John Wells.[6]**

Plaintiff alleges that Unit Manager Steven Williams, Captain Jason Back; Chief Unit Manager Rodney Macintosh, and C.O. John Wells attended a town hall meeting (Doc. 16, PageID 216). Plaintiff does not explain how the attendance of these Defendants at a town hall meeting hosted by Deputy Warden Luneke violated his constitutional rights, and Defendants are unaware of any violations this may have caused. As Plaintiff failed to state a §1983 claim against these individuals, his suit against them should be dismissed.

**8. Plaintiff fails to state a claim against Defendants Sandridge and Sedlitz.**

Plaintiff alleged that Lt. Sandridge and C.O. Sedlitz took IPs Smith and Burton to the hole. (Doc. 16, PageID 208). He further alleges that Lt. Sandridge and C.O. Sedlitz were deliberately indifferent to Plaintiff's health and safety when they knowingly allowed Plaintiff to eat contaminated food. (*Id.*). However, he also says that an Aramark employee, rather than Lt. Sandridge and C.O. Sedlitz, caused Plaintiff to eat the contaminated food (Doc. 16, PageID 207). Regardless, these allegations, even if true, fail to state a § 1983 violation. *Sims v. Michigan Dept. of Corr.*, 23 F.App'x 214, 216 (6th Cir.2001) (a broad allegation of nutritional deficiency, without more detail, is not sufficient to state an Eighth Amendment claim); *Bass,* 167 F.3d 1041, 1048 (6th Cir. 1999) ("Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior.").

---

6 As of the date of this filing, Defendants Captain Jason Back; Chief Unit Manager Rodney Macintosh, C.O. John Wells have not been served. However, the State of Ohio could be statutorily obligated to represent them should they be served. This constitutes the State's interest.

C. **Plaintiff has Failed to Allege the Necessary Pattern of Prior Constitutional Violation to Support any Theories of "Tolerance" or "Failure to Train" Claim**

Plaintiff alleges that Defendants Sandridge and Ms. Sedlitz were deliberately indifferent to his health and safety when they allowed the Plaintiff and other inmates to eat contaminated food knowing it had been reported to them that the food was retrieved from a trash can. (Doc. 16, PageID 208). Both "failure to train" and "tolerance" theories require allegations of "deliberate indifference" by the municipality. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005) (explaining that deliberate indifference does not mean a collection of sloppy, or even reckless oversights; it means evidence showing an obvious, deliberate indifference to the alleged violation; deliberate indifference cannot be met by a showing of simple or even heightened negligence); *Connick v. Thompson,* 563 U.S. 51, 61 (2011). To proceed under a "tolerance" theory, Plaintiff must plead facts plausibly suggesting: "(1) a clear and persistent pattern of unconstitutional conduct by municipal employees; (2) the municipality's 'notice or constructive notice' of the unconstitutional conduct; (3) the municipality's tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and (4) that the policy of inaction was the 'moving force' of the constitutional deprivation." *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014)(citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)). In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A "failure to train" claim under *Monell* is viable only when a plaintiff alleges: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [agency's] deliberate indifference; and

16

(3) that the inadequacy is closely related to or actually caused [his] injury." *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 (6th Cir. 2019). A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. A policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*. *Id.* To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.*

Plaintiff's claim fails as a matter of law. First, Plaintiff's claims are based upon a single alleged occurrence of food contamination by an Aramark employee that Plaintiff alleged occurred during one meal. (Doc. 16, PageID 206). Further, Plaintiff provides the court with documentation[7] that Defendants investigated the incident and took corrective actions. (Doc. 16, PageID 224) (report documenting Defendants' investigation and later corrective action taken). After Defendants' investigation, Plaintiff provides documentation that the inmates assisting on food service involved in the allegations were removed from their position. *Id.* Further, when Plaintiff raised potential medical issues with staff, staff directed Plaintiff to "seek medical attention." (*Id.* at PageID 234). Plaintiff confirms that he was provided medical services (*Id.* at PageID 215). The totality of Plaintiff's allegations fails to assert a claim of deliberate indifference. Instead, Plaintiff's allegations demonstrate that ODRC Defendants responded to his allegations of food contamination. Consequently, Plaintiff's claims fail as a matter of law and this Honorable Court should dismiss Plaintiff's Complaint.

Additionally, Plaintiff's claim is entirely based upon Defendants being in a position of supervisory authority. Respondeat superior, however, is not a proper basis for liability under §

---

[7] When a document attached to the complaint contradicts the allegations, the document trumps the allegations. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

1983.  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Supervisors cannot be held liable for the acts of their employees where the alleges against them are based solely on their right to control employees, or their "simple awareness of employees' misconduct." *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421. A supervisor cannot be held liable under § 1983 for the actions of his or her employees where the allegation of liability is based upon a mere failure to act, a mere right to control employees, or simple negligence in failing to recognize the potential for harm to occur or to prevent it from occurring. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999).  Rather, to sustain a viable claim against a supervisor, Plaintiff must allege facts suggesting the supervisor actively engaged in unconstitutional behavior.  *Id.*

**D.      Plaintiff Fails to Allege a Claim of *Deliberate Indifference* against Defendants as a Matter of Law**

Plaintiff alleges that he was served contaminated food from a garbage can. (Doc. 25, PageID 336). The Eighth Amendment requires Correction Centers to "provide humane conditions of confinement" to inmates serving a sentence following conviction. *Moore v. Morgan*, No. 1:16-cv-655, 2019 U.S. Dist. LEXIS 233063 at *18 (S.D.Ohio Sep. 6, 2019), citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Moore*, 2019 U.S. Dist. LEXIS 233063 at *18, citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with deprivations of essential food, medical care, or sanitation, or other conditions intolerable for prison confinement." *Id.*, citing *Richmond v. Settles*, 450 F.App'x 448, 455-56 (6th Cir. 2011). To establish a constitutional violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.*, quoting *Rhodes v. Chapman*, 452 U.S.

337, 347 (1981).

Incarcerated Persons cannot establish an Eighth Amendment violation by pointing to a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation. *Ellis v. Mohr*, No. 1:13 CV 1058, 2017 U.S. Dist. LEXIS 152059, at *23 (N.D.Ohio Sep. 19, 2017), citing *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment." *Id. See also*: *Schrader v. Collins*, No. 97-4471, 1998 U.S. App. LEXIS at *5 (6th Cir. Nov. 23, 1998) ("This circuit refuses to conduct a totality of the circumstances analysis in Eighth Amendment cases."); *Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir.1994) ("Eighth Amendment alleges may not be based on the totality of the circumstances, but rather must identify a specific condition that violates the inmates' right to personal safety.")

"The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Correa v. Cullum*, No. 1:17cv300, 2018 U.S. Dist. LEXIS 72823, at **11-14 (S.D.Ohio May 1, 2018) (collecting cases for the proposition that unappetizing or contaminated food does not rise to the level of constitutional violations). The Sixth Circuit has stated that a complaint about the preparation or quality of prison food is "generally far removed from Eighth Amendment concerns" *Id.*, quoting *Cunningham v. Jones*, 567 F.2d 653, 659-660 (6th Cir. 1977); *see also*, *Cutsinger v. Louisville Metro Dep't of Corr.,* No. 3:19-cv-P254, 2019 U.S. Dist. LEXIS 120389, at *6 (W.D.Ky. July 19, 2019) (the "mere presence of foreign bodies, even insects, in the food served to prisoners or dirty or moldy food trays do not constitute an Eighth Amendment violation").

In the instant Complaint, Plaintiff is alleging a single incident of food contamination. Plaintiff's alleges concerning the food fail for two fundamental reasons. First, beyond his

19

allegation that the food was in a trash can, Plaintiff offers absolutely no allegation that the food that he ate failed to meet their basic nutritional needs. *Sims v. Michigan Dept. of Corr.*, 23 F.App'x 214, 216 (6th Cir. 2001) (a broad allegation of nutritional deficiency, without more detail, is not sufficient to state an Eighth Amendment claim). Second, Plaintiff fails to allege that he suffered any serious injury as a result of poor nutrition based upon a single occurrence. Courts have broadly held that occasional disgusting, inedible, or unsanitary meal - even one that results in food poisoning - does not satisfy the "objective" component of an Eighth Amendment claim, particularly where no significant injury resulted. *Balcar v. Smith*, 2017 U.S. App. LEXIS 16462, at *1-2 (6th Cir.); *see also Cunningham v. Jones*, 567 F.2d 653, 659-660 (6th Cir. 1977) (stating Complaints "about preparation or quality of prison food…would generally be far removed from Eighth Amendment concerns"). Similarly, here, Plaintiff's allegations of an upset stomach and vomiting due to the food quality on one occasion do not rise to the level of a constitutional violation. *Correa v. Cullum*, No. 1:17-cv-300, 2018 U.S. Dist. LEXIS 72823, at *10 (S.D.Ohio May 1, 2018) (stating "courts routinely dismiss alleges that allege only occasional incidents of foreign object discovered in prison food).

Even so, occasional episodes of food poisoning and vomiting do not rise to an Eight Amendment claim. *Id.*, citing *Velhuysen v. Aramark Correctional Servs., Inc.,* No. 2:14cv192, 2017 U.S. Dist. LEXIS 7172 (W.D.Mich Jan 19, 2017). Consequently, assuming Plaintiff's allegations to be true, Plaintiff fails to allege facts rising to the level of deliberate indifference to which he is entitled to relief. This Honorable Court should dismiss Plaintiff's Complaint.

**E.     Plaintiff Fails to Sufficiently State a Plausible Retaliation Claim Against Defendants.**

Plaintiff broadly alleges that he was retaliated against for seeking medical treatment and complaining about Aramark. The sum of Plaintiff's claim is that he was retaliated against by being

20

placed on lockdown for the alleged reason of COVID-19, and "only allowed the Plaintiff out of his cell for 15 minutes a day to shower, make phones, check his communications regarding kites and informal complaints, or to make his meals for the day." (Doc. 16, PageID 216). In the documents Plaintiff attaches, he does not allege that he complained of or grieved seeking medical treatment. To the contrary, staff directed Plaintiff to seek medical services. Plaintiff's generalized claim, fails to state facts that if true would entitle him to relief.

"A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Lumbard v. Lillywhite*, 815 F.App'x 826, 834 (6th Cir. 2020) citing *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001). Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish a First Amendment retaliation claim, a plaintiff must establish the following three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

### 1. Plaintiff's Alleged Protected Conduct.

Plaintiff alleges that his action of seeking medical treatment and complaining about Aramark is protected conduct. It is well-established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances" and is therefore actionable under Section 1983. *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Plaintiff alleges Defendants put him in lock down after seeking medical services following his allegation of food poisoning. But the documents Plaintiff attaches which constitute his allegations, support the opposite, that Staff reviewed Plaintiff's Communications, affirmed his

21

grievance, took immediate corrective action, and directed him to go see medical (Doc. 16, PageID 224).  Further, Plaintiff was "locked down" for 72 hours pursuant to an order from Captain Agee to slow the spread of COVID-19.  (*Id.* at PageID 212; 234).  Accordingly, Plaintiff fails to allege the first element of his retaliation claim.

### 2.    The Alleged Adverse Action Would Not Deter an Incarcerated Person of "Ordinary Firmness" from Continuing to Engage in the Protected Conduct

Arguendo, even assuming Plaintiff sufficiently alleges that he engaged in protected conduct prior to being allegedly locked down, Plaintiff cannot establish that being locked down, being yelled at, or being on the receiving end of aggressive looks are qualifying adverse actions. *See Hardy v. Adams*, No. 16-2055, 2018 U.S. App. LEXIS 9471, 2018 WL 3559190, at * 3 (6th Cir. Apr. 13, 2018) (holding that a threat by a prisoner's assistant resident unit supervisor to make the prisoner's "life 'hell'" was too vague to qualify as an adverse action); *see Wood v. Eubanks*, 25 F.4th 414, 429 (6th Cir. 2022) (noting that "[m]ere threats . . . are generally not sufficient to satisfy the adverse action requirement") (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004)).

To satisfy the second element, the plaintiff must establish that the adverse action is one that would "deter a person from ordinary firmness" from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396; *see also Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). While a plaintiff is not required to show "solely egregious" actions, "[a] chilling effect sufficient under this prong is not born of de minimis threats or inconsequential actions…." *Ctr. For Bio-Ethical Reform, Inc. v. City of Springsboro*, 477 F.3d 807, 822 (6th Cir. 2007) (internal quotations omitted).

Here, Plaintiff alleges that as of December 1, 2021, he sought medical services several times. (Doc. 16, PageID  212). Further, at least 9 inmates on Plaintiff's unit were escorted to

medical (*Id.*).

Plaintiff was clearly not deterred by the alleged retaliatory actions. *See* e.g., *Gordon v. Van Schoyck*, No. 3:17-CV-721, 2020 WL 906346, at \*6 (N.D. Ohio Feb. 25, 2020). (finding that plaintiff had not satisfied second element where "none of the[] acts deterred [plaintiff] from continuing to engage in protected activity by filing grievances and ICRs"); *Kennedy v. Tallio, 20 F. App'x 469*, 471 (6th Cir. 2001) (finding that plaintiff's placement on modified access to grievance procedure did not deter him from engaging in protected conduct because "he continued to attempt to file grievances"). Simply put, locking down inmates alleging contagious flulike symptoms for a short quarantine period does not deter a person of ordinary firmness from seeking medical services and it did not prevent Plaintiff from complaining about Aramark. The imposition of lockdown status is not an atypical, significant deprivation from the ordinary circumstances of prison life and prisoners have no liberty interest in remaining free from lockdown. *Cook v. Campbell*, No. 98-5202, 1999 U.S. App. LEXIS 4699, at \*1 (6th Cir. Mar. 16, 1999).

Likewise, Plaintiff's general allegations that staff yelling at him does not amount to adverse action. Verbal abuse alone generally does not rise to the level of a due process or Eighth Amendment violation, and it is insufficient to support a § 1983 claim for relief. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Thaddeus-X*, 175 F.3d at 398.

> **3.** **Plaintiff's Allegation Regarding the Motivation of Being Locked Down Fails to Establish Any Possible Nexus to His Alleged Protected Conduct of Seeking Medical Services**

Plaintiff fails to allege the motivation of the decision maker regarding being locked down, other than to generally assert that the claim of COVID-19 Protocols were false. Moreover, even

23

Plaintiff's generalized claim for the motivation fails based upon the sequence of events Plaintiff alleges. Under the causation element of a claim for retaliation, the subjective motivation of the decisionmaker is at issue – i.e., "the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (citing *Thaddeus-X*, 175 F.3d at 399). Temporal proximity alone is insufficient to meet the plaintiff's burden to show that the filing of grievances was a substantial or motivating factor for the alleged adverse action. *See Smith*, 250 F.3d at 1038; *Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012) (holding "temporal proximity alone is insufficient to show a causal connection in his case because [the plaintiff] has presented no other proof of retaliatory motive"); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) ("Without more, however, [plaintiff's] conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). Conclusory allegations of retaliatory motive, unsupported by material facts, are not sufficient to state a claim under 42 U.S.C. § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987); *see also Williams v. Bates,* 1994 U.S. App. LEXIS 34260, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994) (unpublished) (holding that the plaintiff's claim of retaliatory transfer was "wholly conclusory and so [was] insufficient to state a cause of action under § 1983").

Here, Plaintiff offers only unsupported generalizations of retaliation. Moreover, aside from alleging being locked down for COVID-19 precautions, getting yelled at, and receiving mean looks, Plaintiff asserts blanketly that he was retaliated against without any factual allegations. (*See* generally, Doc. 16).  Critically, even assuming Lt. Tatman and/or Captain Agee locked down the unit as a form of retaliation, according to Plaintiff, Plaintiff alleges that the same happened before Plaintiff was taken to medical.  (Doc. 16, PageID  212).  Plaintiff has failed to allege the third

element of this claim.  As such, Defendants are entitled to judgment as a matter of law in their favor.

> **F.** **The Eleventh Amendment Bars Plaintiff's Alleges Against Defendants In Their Official Capacities**

At a minimum, Plaintiff's official capacity alleges against Defendants are barred by the Eleventh Amendment.  Where a state has not waived its immunity, the Eleventh Amendment acts as a jurisdictional bar to a federal court lawsuit against a state. *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992); *Wilson-Jones v. Caviness*, 107 F.3d 358, 358 (6th Cir. 1997).  Ohio has not waived its sovereign immunity, and Congress did not disturb the states' Eleventh Amendment immunity when it passed 42 U.S.C. § 1983.  *Wolfel*, 972 F.2d at 718; *Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D. Ohio 1993).  The Eleventh Amendment thus precludes all suits, whether for injunctive or monetary relief, against the state and its departments.  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–01, 79 L.Ed.2d 67 (1984)).  Moreover, a suit against a state official in his or her official capacity is deemed a suit against the official's office.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, a suit against a state official in his or her official capacity is no different from a suit against the state itself, and is also barred by the Eleventh Amendment.  *Id*; *see also Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299 (6th Cir. 1984) (holding that the Eleventh Amendment barred suit against university officers sued in their official capacities).

Here, Plaintiff indicates that he is suing Defendants in their "individual and in their official capacity." (Doc. 16, PageID  203-206).  To the extent Plaintiff seeks damages from Defendants in their official capacities, the Eleventh Amendment bars those alleges for monetary relief. *Will*, 491 U.S. at 65.

**G.      Plaintiff's Generalized Equal Protection Claim Fails as a Matter of Law**

Plaintiff offers no factual basis for his claim that Defendants denied him equal protection under the Fourteenth Amendment. Instead, Plaintiff alleges that Defendants when violated ODRC policies and harassed and retaliated against him when he went to medical, they somehow violated the Fourteenth Amendment (Doc. 16, PageID  216; 218, 220, & 221).

The Equal  Protection Clause requires  the  State  to  treat  all  similarly  situated people equally. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Washington v. Davis*, 426 U.S. 229, 239-40 (1976). Here, Plaintiff fails to allege any facts he was treated differently, or even to whom in comparison. *See* generally  (Doc. 16). Further, he fails to allege that he is a member of a protected class or that the alleged discrimination is a result of his membership in the protected class.  (Doc. 16).

Even if Plaintiff had alleged that he is a member of a protected class and/or that the alleged discrimination was a result of his membership in the protected class, his claim still fails.  To state an equal protection claim, a plaintiff must adequately plead that the defendant treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir., 2011). *See also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the

26

classification used by government decision-makers. *Id*. *See also Center for Bio-Ethical Reform, Inc., 648 F.3d at 379*.

Plaintiff has not pled, nor adequately alleged, a Fourteenth Amendment equal protection violation. Plaintiff's Claim fails as a matter of law, as Plaintiff fails to identify a comparable inmate, or allege that he was similarly situated to the unnamed prisoner whom he alleges was treated more favorably than he was. *Glover v. Boardman*, No. 1:18 CV 1134, 2018 U.S. Dist. LEXIS 215290, at *16 (N.D. Ohio Dec. 21, 2018); *see also Hensley v. Blount Cty. Jail*, No. 3:15-CV-00019, 2018 U.S. Dist. LEXIS 41874, 2018 WL 1324138, at *6 (E.D. Tenn. Mar. 14, 2018) (citing *Taylor Acquisitions, L.L.C., v. City of Taylor*, 313 F. App'x 826, 836 (2009) (to satisfy the threshold inquiry in an equal protection claim, plaintiff must allege that he and the individuals who were treated differently were similarly situated in all material respects).

Plaintiff cannot overcome his failure to show that he was treated differently than any other inmate in the relevant class. Because Plaintiff fails to allege any facts with respect to whether Defendants treated similar situated individuals differently, this Honorable Court should dismiss Plaintiff's Claim.

**H. Defendants Have Qualified Immunity From this Civil Action**

Qualified immunity exists to shield government officials who are performing discretionary functions from liability for civil damages and the costs of trial or the burdens of broad-reaching discovery. *Harlow v. Fitzgerald*, 457 U.S. 800 (1972). It exists to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 817-

27

818.

On one hand, the Supreme Court has held that before considering whether a right was clearly established, a court should first address the "threshold" issue of whether the facts alleged in the complaint demonstrate that the defendant actually violated Plaintiff's constitutional rights. *Saucier v. Katiz*, 533 U.S. 194 (2001). Here, Plaintiff has clearly not alleged any facts that show any of the Defendants actually violated his constitutional rights, as he has not alleged any personal involvement, let alone, tacit approval, acquiescence, or acknowledgement of the purported illegal conduct.

On the other hand, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court has held that a court may skip the analysis of whether there was a constitutional violation if the constitutional or statutory right is not clearly established. Since Defendants have raised the qualified immunity defense, Plaintiff bears the burden of showing that they are not entitled to qualified immunity. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). This burden is carried out in the pleading stage by Plaintiff alleging plausible facts that the Defendants' conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). Plaintiff is obligated to plead facts that, viewed in a light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable individual confronted with the same situation would have known that their conduct violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). While the case law must not be directly on point, "existing precedent must have placed…the constitutional question beyond debate." *Mullinex v. Luna*, 577 U.S. 7, 11 (2015). A clearly established right cannot be defined using a "high level of generality," but instead must be "particularized" to the facts of the case. *al-*

28

*Kidd*, 563 U.S. at 742.

Here, none of the facts alleged and case law referenced by Plaintiff show that he had a constitutional right so clearly established in a particularized sense that Defendants reasonably should have known their personal conduct violated said purported constitutional right. Plaintiff alleged no personalized conduct of Defendants at all. Instead, Plaintiff alleges that he was given food poisoning by two other incarcerated persons employed in food services and an Aramark employee. The same cannot be blanketly applied to all Defendants. Plaintiff's broad allegations are not sufficient to show that any of the ODRC Defendants violated his clearly established constitutional rights. Thus, Defendants are entitled to qualified immunity and this matter should be dismissed.

## IV.    Conclusion

The Court should grant Defendants' motion for judgment on the pleadings and dismiss Plaintiff's alleges against them for failure to state a claim upon which relief may be granted. To the extent that any state alleges remain, this Court should decline to exercise concurrent jurisdiction.

<div style="margin-left: 50%;">

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/Marcy A. Vonderwell*
MARCY VONDERWELL (0078311)
MATTHEW P. CONVERY (0095704)
Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
P: 614-644-7233/F: 866-473-4883
Marcy.Vonderwell@OhioAGO.gov
Matthew.Convery@OhioAGO.gov

*Counsel for Defendants*

</div>

29

## CERTIFICATE OF SERVICE

I certify that a copy of *Defendants' Motion for Judgment on the Pleadings* has been electronically filed on July 5, 2024, and served upon Plaintiff,  via U.S. mail, postage prepaid, at the address below:

Norman Burke, #A744-263
Chillicothe Correctional Institution
P.O. Box 5500
Chillicothe, Ohio 45601

/s/Marcy A. Vonderwell
MARCY A. VONDERWELL (00789311)
Senior Assistant Attorney General