# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NORMAN BURKE,

   Plaintiff,

            **Case No. 2:22-cv-4421**

  vs.

            **Judge Algenon L. Marbley**
            **Magistrate Judge Elizabeth P. Deavers**

ARAMARK CORRECTIONAL
SERVICES, *et al.*,

   Defendants.

## <u>REPORT AND RECOMMENDATION AND ORDER</u>

Plaintiff, Norman Burke, currently an inmate at the Chillicothe Correctional Institution ("CCI") who is proceeding without counsel, brings this civil rights action under 42 U.S.C. § 1983. Currently before the Court are a Motion to Dismiss filed by Defendant Aramark Correctional Services, LLC ("Aramark") (ECF No. 47) and two Motions for Judgment on the Pleadings filed by certain State Defendants and the State of Ohio as an interested party (collectively, the "ODRC Defendants.") (ECF Nos. 52, 71.) All of these motions have been fully briefed. (ECF Nos. 61, 69, 53, 56, 73, 76.) As set forth below, it is **RECOMMENDED** that the motions be **GRANTED**.

## I.   BACKGROUND

This case is one of six related cases filed by inmates several of whom currently are incarcerated at CCI. These cases all arise from an incident that occurred on November 27, 2021, when these same inmates were incarcerated at the Warren Correctional Institution ("WCI"). The operative complaints in these cases, while not strictly identical, generally contain the same allegations. Briefly, each Plaintiff alleges that an Aramark employee served food removed from

a trash can to inmates in plaintiffs' housing unit and plaintiffs experienced minor short term gastrointestinal issues in the following days. Each Plaintiff names approximately 25 or more defendants[1] and asserts a variety of claims ranging from an Eighth Amendment conditions of confinement claim to an equal protection claim. Service in all of the cases, including this one, has not been successful on all Defendants.

In the Report and Recommendation screening Plaintiff's initial Complaint, the Court summarized the specific factual allegations of this case as follows:

> In the complaint, plaintiff alleges that he was served contaminated food during dinner on November 27, 2021 while at WCI. (Doc. 1-1, Complaint at PageID 16). According to plaintiff, defendant Aramark, Aramark coordinator Woods, John/Jane Doe Aramark supervisor, and other ODRC correctional officers intentionally served plaintiff and other inmates food out of a trash can. (*Id.*).

> Plaintiff alleges that defendant Sgt Maggard reviewed the November 27, 2021 food service video footage with plaintiff. According to plaintiff, the video shows Woods retrieving beans out of the trash can and putting them on the serving line. (*Id.* at 18). Plaintiff further alleges that defendants Aramark employee Ms. Moody and C.O. Moody both confirmed that the food was served from the trash can. Plaintiff alleges that hours after dinner, he experienced symptoms in the form of upset stomach, cramps, severe diarrhea, and vomiting. (*Id.* at PageID 16). After his symptom persisted for several days, plaintiff alleges that a correctional officer informed plaintiff that two inmate foodworkers inmates Edward Smith and Richard Burton—alerted a lieutenant and officer that defendant Woods "had retrieved beans from a contaminated trash can, and had them placed on trays to be served." (*Id.* at PageID 17). According to plaintiff, he was informed that Smith and Burton were placed in segregation in an attempt to silence them.

> On December 2, 2021, plaintiff claims that he filed a kite with defendant institutional inspector Isaac Bullock concerning the November 27, 2021 dinner. Plaintiff claims that Bullock informed plaintiff that the issue "has been verified and addressed" and that "[c]orrective actions have been taken." (*Id.*). Plaintiff alleges that instead of directing staff to send plaintiff to medical, Bullock informed plaintiff that he would have to complete a health service request for his medical needs, which plaintiff notes would take several days. According to plaintiff, ODRC medical staff

---

[1] Aside from certain Aramark Defendants, Plaintiffs essentially name as Defendants any ODRC employee with whom they came into contact between November 27, 2021 and the date of their transfer to CCI.

refused to see him in an alleged effort to cover up that contaminated food was served and to avoid diagnosing plaintiff. (*Id.* at PageID 18-19). As detailed below, plaintiff alleges that instead of providing him with medical care, defendants attempted to cover-up the incident and retaliated against inmates who sought medical attention or filed grievances.

Plaintiff alleges that defendant Jane Doe health-care administrator provided a list of all inmates who reported stomach issues to defendants Bullock, Agee and Tatman. (*Id.* at PageID 19). According to plaintiff, on December 5, 2021, defendant officer Cook informed plaintiff that he and the other inmates reporting symptoms would not be permitted to leave their cells until they had a conversation with a "white shirt," which plaintiff indicates refers to a major, captain, lieutenant, or sergeant. Plaintiff alleges that defendant Lt. Tatman—sent by Captain Agee— subsequently screamed at the inmates reporting symptoms, noting that he had seen their medical complaints and stating that "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do? . . . "You[']r[e] sick so what . . . sleep it the fuck off." (*Id.*). Tatman allegedly attempted to intimidate inmates from going to medical or further reporting their symptoms, threating that he would make their lives living hell if his "staff gets in trouble over that Aramark bitch" and presented them with a choice to go to medical or remain locked down. (*Id.*).

According to plaintiff, family members of the impacted inmates called the institution, demanding that their family members be seen by medical or they would contact the state troopers. (*Id.* at PageID 20). Plaintiff claims that he and nine other inmates were subsequently escorted to medical by defendant Ms. Penunzio. Although he was taken to medical, plaintiff claims that defendants nurse practitioners Sky and Rachel conducted a "fake screening" consisting solely of checking their blood pressure before stating "well we seen you." (*Id.*). Plaintiff further alleges that instead of providing him with any treatment, the defendant nurses made jokes about the inmates being fed out of the trash can and stated "this is what you signed up for coming to prison." (*Id.* at PageID 24).

Plaintiff claims the inmates were taken from medical and placed on "quarantine status" until December 9, 2021, as a punishment for filing grievances and seeking medical treatment. (*Id.* at PageID 20-21). During this time, plaintiff claims that he was so sick he could not leave his bed, but that defendants Epperson and Farmer disregarded his requests to see medical. (*Id.* at PageID 21). Agee allegedly attributed the lockdown to COVID-19, however plaintiff notes that this contradicts Tatman's earlier comments and that none of the inmates were tested for COVID-19. During the lockdown, which plaintiff claims was only imposed against those who sought medical after Tatman's comments, plaintiff claims inmates were restricted from filing grievances or complaints.

Plaintiff claims that on December 6, 2021, after he continued to demand medical attention, plaintiff and other inmates were taken to medical. According to plaintiff,

he saw defendant John Doe doctor, who indicated that "nobody says you all have COVID-19," refused to diagnose plaintiff or others, and kept them on "quarantine status," despite failing to explain why they were locked down. (*Id.* at PageID 22). Plaintiff claims defendant warden Mitchell-Jackson was present and spoke with medical staff at this time. According to plaintiff, Jackson yelled at the inmates about having to come into work early because of them and otherwise refused to converse with them.

Plaintiff claims that defendants Luneke, Back, Williams, Macintosh, Wells, and several others subsequently held a "town hall meeting," during which Luneke stated that inmates were not transferring institutions for at least eight weeks, their doors were to remain closed, and no questions were to be answered regarding "Aramark." (*Id.* at PageID 22). Plaintiff alleges that defendants placed them on lock-down "to prevent plaintiff and the other inmates from exposing that they were fed contaminated food by Aramark" and in retaliation for filing informal complaints and for seeking information and medical attention in connection with the allegedly contaminated food. (*Id.* at PageID 23).

On or around January 10, 2022, plaintiff alleges that all the inmates in the unit were transferred to the Chillicothe Correctional Center on an "emergency transfer." (*Id.*). As relief, plaintiff seeks monetary damages. (*Id.* at PageID 26).
…

Based on the above factual allegations, the Court understands plaintiff to bring Eighth Amendment deliberate indifference and First Amendment retaliation claims, as well as state-law claims, against defendants in their individual and official capacities. (*See id.* at PageID 23-25).

(ECF No. 6 at 4-7.)

Following the filing of the initial Report and Recommendation, Plaintiff filed a motion to amend and an amended complaint (ECF Nos. 10, 11) and a motion for leave to file a Second Amended Complaint. (ECF No. 16.) The Second Amended Complaint included additional factual allegations not contained in the original complaint, altered or identified some of the named defendants, and included an additional claim brought under the Equal Protection Clause. By Order dated December 12, 2023 (ECF No. 18), the Court granted Plaintiff's motions for leave to amend the Complaint, screened the Second Amended Complaint as the operative complaint, and vacated the earlier Report and Recommendation. (*Id.*) In screening the Second Amended

Complaint, the Court concluded that it was deserving of further development and allowed all of Plaintiff's claims to proceed.  (*Id.*)  The Court noted, however, that it had not made a determination as to the merits of the claims or potential defenses and that Defendants were not precluded from filing a motion to dismiss or other appropriate motion under the Federal Rules of Civil Procedure.  (*Id.*)

The Second Amended Complaint names 27 Defendants including Aramark, "Jane/John Doe 'Aramark Supervisor,'" and "Ms. Woods," described as employed by Aramark as a manager (collectively, the "Aramark Defendants.")  (ECF No. 16 at ¶¶ 3, 4, 5.)  Also named as Defendants are 24 individuals identified as ODRC employees, including Wanza Mitchell-Jackson, Isaac Bullock, Sgt. J. Maggard, Unit Manager Steven Williams, Case Manager Ms. Kearns, David Agee, Lt. Tim Tatman, Lt. David Sandridge, C.O. Koch, C.O. Fredrick Epperson, C.O. Larry Farmer, C.O. John Wells, C.O. Ms. Sedlitz, Meredyth McLaughlin, Nurse Practitioner Natasha Artenz, Nurse Practitioner Rachel Allen, Dr. William Harlan, Dr. Raymond Corbett, C.O. Ms. Kimberly Penunzio, Captain Jason Back, Unit Manager Chief Rodney Macintosh, Deputy Warden Douglas Luneke, Deputy Warden Robert Welch, and Lt. Kayla Stabelton[2] (collectively, "the ODRC Defendants").  (*Id.* at ¶¶ 6-29.)

The Court's docket confirms that, with respect to the Aramark Defendants, Plaintiff has not completed service on either "Jane/John Doe 'Aramark Supervisor'" or Ms. Woods.  Further, Plaintiff has not completed service on Defendants Sgt. J. Maggard, Unit Manager Chief Rodney Macintosh, Captain Jason Back, C.O. Koch, C.O. John Wells, Lt. Kayla Stebelton, Nurse Practitioner Rachel Allen, Nurse Practitioner Natasha Arten, C.O. Ms. Kimberly Penunzio, or

---

[2] Plaintiff also refers to this Defendant as Lt. Kayla Stebelton in the caption of his Second Amended Complaint and directed a summons to "Kayla Stebleton."  (ECF Nos. 16, 29.)

C.O. Larry Farmer.  In the first-filed Motion for Judgment on the Pleadings, the State of Ohio explains that, under R.C. § 109.361, the Ohio Attorney General may appear in any civil action in order to protect the interest of the State even though no request for appearance has been made by the officer or employee. Such appearance does not waive personal service and any defenses available at law.   (ECF No. 52 at n.2.)

As noted, for purposes of the current motions, the Second Amended Complaint is the operative pleading.  The overall gist of Plaintiff's factual allegations do not vary greatly from those set forth above.  One notable exception is the addition of allegations that Aramark's policies and customs are designed to incentivize money saving measures, including, *inter alia*, failing to comply with proper sanitation measures.  (ECF No. 16 at ¶¶ 133-144.)  To the extent that any additional factual allegations are relevant to the pending motions, the Court will address them in the context of addressing the motions.  The Court considers each of the pending motions in turn.

## II.    ARAMARK'S MOTION TO DISMISS

Aramark has moved to dismiss, making two primary arguments.  First, Aramark asserts that, in order for Plaintiff to succeed on his claim against it, he must identify an Aramark policy, custom, or practice that is responsible for any alleged constitutional deprivation he suffered and he has failed to do so.  Further, Aramark contends that Plaintiff cannot establish the required elements of an Eighth Amendment conditions of confinement claim as to Aramark.  Aramark additionally notes that it has been dismissed in other cases arising out of the same incident and should be dismissed here for the same reasons.  Finally, Aramark contends that Plaintiff has failed to state a First Amendment claim against it.   The Court considers these arguments as follows.

### A.  Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd*., *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police &*

*Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice.  *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc*., 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.  Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## B.  Analysis

A private entity, such as Aramark, that contracts to provide services at a jail can be held liable under § 1983 because it is carrying out a traditional state function.  *Winkler v. Madison Cnty.,* 893 F.3d 877, 904 (6th Cir. 2018) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)).  However, "like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory," but rather "for a policy or custom *of that private contractor*." *Id.* (emphasis in original).  Thus, to the extent Plaintiff's allegations are an attempt to hold Aramark liable under a respondeat superior theory, they fail to state a claim.

Plaintiff's Second Amended Complaint appears to go further by alleging that Aramark

8

has "well settled policies and customs [] which aide in the causation, and deprivation of Plaintiff's Federal Constitutional Rights as they were the 'moving force' behind the alleged deprivation." (ECF No. 16 at ⁋ 142.) Nevertheless, Plaintiff's attempt to hold Aramark liable fall short.

First, to survive Aramark's motion to dismiss, Plaintiff "'needs to allege facts that point towards a policy or custom that forms the basis of his claim.'" *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 740 (S.D. Ohio 2024) (quoting *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802682, at *7 (N.D. Ohio July 13, 2010)). Plaintiff's Second Amended Complaint cites no specific, official Aramark policy that Plaintiff says led to his injuries. As cited above, Plaintiff only makes vague reference to "well-settled policies." The Court, however, may disregard "formulaic recitations of the elements of a cause of action." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Moreover, to show a custom of activity, there must be several instances of similar conduct. *See Leach v. Sheriff of Shelby County*, 891 F.2d 1241, 1248 (6th Cir. 1989) (finding municipality was deliberately indifferent to prisoners' medical needs where 14 paraplegics received "deplorable" treatment). Here, Plaintiff cites a law review article discussing bad prison food provided by contractors such as Aramark. Plaintiff highlights one reported example where an Aramark employee "fed prisoners actual trash." (ECF No. 16 at ⁋ 139.) In Plaintiff's view, this incident, along with his alleged experience, demonstrates Aramark's "MODUS OPERANDI." But listing two events is not enough to establish a custom. *Cunningham v. Shelby Cnty., Tennessee,* 715 F. Supp. 3d 1058, 1066 (W.D. Tenn. 2024), *aff'd,* No. 24-5241, 2024 WL 4825338 (6th Cir. Nov. 19, 2024); *see also Wallace v. Coffee Cnty., Tennessee*, 852 F. App'x 871, 876 (6th Cir. 2021) ("six incidents ... is not sufficient to suggest a widespread, permanent custom"); *Jones v. Muskegon Cnty*, 625 F.3d 935, 946 (6th Cir. 2010) ("a jury could

not reasonably infer from these five incidents alone that the County had a widespread, permanent and well-settled custom of ignoring inmate requests"); and *McGee v. Madison Cnty., Tennessee*, 2017 WL 6804233, at *9 (W.D. Tenn. Oct. 31, 2017) (holding that four instances was not enough to establish a policy or custom).

Plaintiff also cites dissimilar incidents allegedly involving Aramark. (ECF No. 16 at ⁋⁋ 138, 141.) These examples also are not sufficient to allow the Court to draw the reasonable inference that Aramark maintained a custom or practice of allowing employees to serve food removed from a trash can or that Aramark had knowledge of its employee's alleged misconduct here. Plaintiff's allegations are too vague to support a plausible inference that Aramark maintains any widespread practice that caused his injury. At most, Plaintiff has alleged random, sporadic, isolated acts by non-policy making Aramark employees. Such allegations do not demonstrate a custom or policy sufficient to justify liability. Accordingly, it is **RECOMMENDED** that Aramark's motion to dismiss be **GRANTED.**

### III.    MOTIONS FOR JUDGMENT ON THE PLEADINGS

#### A.  Legal Standard

A motion for judgment on the pleadings made under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To overcome such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint need not contain detailed factual

allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549. These standards apply equally when the plaintiff is *pro se*. Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B. Analysis

Although not neatly delineated in his 156-paragraph Second Amended Complaint, Plaintiff appears to set forth two distinct Eighth Amendment claims against various ODRC Defendants. First, he asserts an Eighth Amendment conditions of confinement claim arising from his experiencing what he believes to have been food poisoning from unknowingly eating what he alleges was contaminated food removed from a trash can and knowingly served to him by an Aramark employee. He also asserts that he was delayed or denied proper medical treatment for alleged food poisoning symptoms he suffered following that incident. He broadly alleges that all ODRC Defendants were deliberately indifferent to his circumstances in various ways. Indeed, he alleges certain Defendants failed to act on the knowledge that Plaintiff was served food from a trash can, other Defendants failed to advise Plaintiff that his illness was the result of consuming allegedly contaminated food, and medical staff did not immediately respond

to his reports of stomach pain. Plaintiff also alleges HIPAA violations, yelling and threats, and failure to comply with certain ODRC policies. Additionally, Plaintiff asserts an equal protection claim and state law claims for negligence and emotional distress. Plaintiff's allegations, construed in his favor, also suggest he is asserting a First Amendment retaliation claim, although he does not specifically identify such a claim.

In moving for judgment on the pleadings, the ODRC Defendants assert that, with respect to Plaintiff's claim arising from allegedly eating contaminated food, Plaintiff does not allege that any of them fed him such food. According to these Defendants, at most, Plaintiff alleges that Lt. Sandridge and Ms. Sedlitz were aware of the contaminated food and allowed him to eat it anyway. Further, the ODRC Defendants contend that Plaintiff cannot meet the deliberate indifference standard for any Eighth Amendment claim. With respect to Plaintiff's retaliation claim, the ODRC Defendants argue that Plaintiff fails to sufficiently allege any elements of such a claim. These Defendants also assert that any claims against them in their official capacities are barred by the Eleventh Amendment, Plaintiff's generalized Equal Protection claim fails as a matter of law, and they are entitled to qualified immunity under the circumstances here. Finally, they request that the Court decline to exercise supplemental jurisdiction over any state law claims.

As an initial matter, the Court agrees that all ODRC Defendants sued in their official capacities are immune from suits for damages under the Eleventh Amendment. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The State of Ohio has not constitutionally nor statutorily waived its Eleventh

Amendment immunity in the federal courts. *See Mixon v. State of Ohio,* 193 F.3d 389, 397 (6th Cir. 1999); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982).

The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell,* 436 U.S. 658, 690. Thus, actions against state officials in their official capacities are included in this bar. *Will*, 491 U.S. 58, 70-71. Accordingly, all of the named ODRC Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages.

For these reasons, it is **RECOMMENDED** that the ODRC Defendants' Motions for Judgment on the Pleadings be **GRANTED** as to Plaintiff's official capacity claims against them.

### 1. Eighth Amendment Claim Conditions of Confinement Claim

Before beginning its analysis, it is important that the Court define the specific nature of Plaintiff's conditions of confinement claim. Distilled down, Plaintiff's allegations here involve one instance of experiencing unsanitary food service at WCI on one date – November 27, 2021. The ODRC Defendants do not dispute the fact of this incident and Plaintiff has both cited the incident report confirming this event in the body of his pleading and attached a copy of the report to it. (ECF No. 16 at 42; *id*. at Exhibit 1a.) To be sure, from this wholly isolated incident, Plaintiff has built a lengthy narrative alleging conspiracy, concealment and deliberate indifference, freely ascribing motivations based on little more than what appears to be his belief that someone must be held responsible. At base, however, his claim is that an Aramark employee knowingly served him food removed from a trash can, he consumed that food without any awareness of that fact, and he suffered symptoms consistent with what he believes to have

been food poisoning. Although the Court understands that Plaintiff's symptoms likely were unpleasant and that, accepting Plaintiff's allegations as true, serving food removed from a trash can was imprudent, as explained below, Plaintiff's allegations do not raise a claim of constitutional proportion.

The starting point for the Court's consideration of Plaintiff's conditions of confinement claim is the Eighth Amendment which protects all people from "cruel and unusual punishments." U.S. Const. Am. VIII.

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being...The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment....

*Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989))). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and...'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), then quoting *Helling*, 509 U.S. at 31). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. at 828 (citations omitted).

The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong. *Id.* at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious

harm." *Farmer*, 511 U.S. at 834. The subjective component, on the other hand, requires inmates to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *Smith v. DeWine*, 476 F. Supp. 3d 635, 661 (S.D. Ohio 2020) (citing *Farmer*, 511 U.S. at 834, 837-38). Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Initially, Plaintiff has not alleged the personal involvement by any ODRC Defendant in the food service incident forming the basis of his conditions of confinement claim. Instead, read fairly, Plaintiff's allegations regarding the food service incident are focused almost exclusively on alleged after the fact conduct of various ODRC employees.

A defendant's personal liability in an action brought pursuant to 42 U.S.C. § 1983 hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts ... and indicate what each defendant did to violate his rights ..." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citations omitted). On this basis, Plaintiff has failed to state an Eighth Amendment conditions of confinement claim against any ODRC Defendants.

At most, Plaintiff alleges that Defendants Sandridge and Sedlitz "were aware" that food had been removed from a trash can and they still allowed Plaintiff to eat the contaminated food. (ECF No. 16 at ¶¶ 49, 50.) Further, Plaintiff asserts that these Defendants were deliberately indifferent to "[his] health and safety when they allowed [him] to eat contaminated food knowing that it had been reported to them that the food was retrieved from a trash can." (*Id.* at ¶ 113.) Despite these allegations, Plaintiff has failed to assert a conditions of confinement claim against these two ODRC Defendants sufficient to withstand a motion for judgment on the pleadings.

First, Plaintiff has failed to show the objective component of such a claim.  Even accepting Plaintiff's allegations as true, courts routinely hold that isolated instances of food poisoning are not sufficiently serious to constitute an Eighth Amendment violation.  As another Judge of this Court has noted:

> A review of the case law reflects broad acceptance of the reality that the provision of the occasional disgusting, inedible, or unsanitary meal—even one that results in food poisoning—does not satisfy the "objective" component of an Eighth Amendment claim, particularly where no significant injury resulted.

*Correa v. Cullum*, No. 1:17-CV-300, 2018 WL 2020615, at *4 (S.D. Ohio May 1, 2018), *report and recommendation adopted*, No. 1:17CV300, 2018 WL 2735635 (S.D. Ohio June 7, 2018). For this reason, courts have rejected claims even when presented with allegations that a plaintiff has ingested contaminated food.

In *Correa*, the Court dismissed Plaintiff's claim amid allegations that he "inadvertently ingested some portion of at least one [rat leg], which caused him to suffer an 'actual injury .. which he was unable to recover from.'"  *Id*. at *5.  As discussed in *Correa*, other factually similar examples exist.  In *Velhuysen v. Aramark Correctional Servs., Inc.*, 2017 WL 236191 (W.D. Mich., Jan 19, 2017), the plaintiff alleged that he was served spoiled and moldy food on four separate occasions, became violently ill with frequent bowel movements and vomiting, high fever, upset stomach, vomiting, nausea and bloody bowel movements for 2-3 days after another meal, and was served another deficient meal on a sixth date.  Two of the alleged incidents occurred on back-to-back days in December and three more were within the same week in August.  Nevertheless, the court held that all six incidents constituted only "isolated incidents" that did "not constitute a sufficiently serious deprivation" under the objective component of the Eighth Amendment. *Id*. at *2.  Similarly, in *Wiley v. Kentucky Dept. of Corrections*, 2012 WL

5878678 (E.D. Ky. Nov. 21, 2012), the court dismissed an inmate's claim even though he alleged

that he vomited and experienced stomach spasms for three days after finding a dead rat in his

soup.

> Wiley's allegations do not rise to the level of an Eighth Amendment violation.
> Courts have consistently held that isolated incidents of foreign bodies, including
> rodents and insects, surfacing in the food served to prisoners is not an Eighth
> Amendment violation. *Tucker v. Rose,* 955 F.Supp. 810, 815 (6th Cir. 1997) (citing
> *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285 (1974)). "The fact that the
> [prison] food occasionally contains foreign objects or is sometimes served cold,
> while unpleasant, does not amount to a constitutional deprivation." *Smith v.
> Younger,* No. 985482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (affirming
> district court's dismissal of plaintiff's Eighth Amendment claim based on the
> presence of a worm in her peanut butter); *see also, Hamm v. DeKalb County,* 774
> F.2d 1567, 1575 (11th Cir. 1985); *Miles v. Konvalenka,* 791 F.Supp. 212 (N.D. Ill.
> 1992) (single instance of finding mouse in food not actionable). Wiley's claim about
> his prison food on May 1, 2011, will be dismissed for failure to state a claim upon
> which relief can be granted.

*Wiley*, 2012 WL 5878678, at *8 (E.D. Ky. 2012).; *see also Clark v. Junck*, No. 2:23-CV-119,

2023 WL 4861751, at *4 (W.D. Mich. July 31, 2023) (dismissing claim arising from one

instance of being served spoiled milk and citing similar cases); *Gilmore v. Trinity Servs. Grp.,

Inc.,* No. 4:20CV136, 2020 WL 2043454, at *2 (N.D. Ohio Apr. 27, 2020) (isolated incident of

food poisoning does not characterize extreme deprivation necessary to make out an Eighth

Amendment conditions of confinement claim); *Boone v. MacLaren*, No. 2:16-CV-271, 2017 WL

3015771, at *4 (W.D. Mich. July 17, 2017 (confirming that Plaintiff becoming ill on one

occasion does not constitute a serious deprivation sufficient to violate the Eighth Amendment

and citing cases); *Fox v. Mayfield Graves Co. Det. Ctr.*, No. 5:14-CV-P225-TBR, 2015 WL

1438447, at *3 (W.D. Ky. Mar. 27, 2015) (concluding that one instance of food poisoning from

maggot-infested food did not state a claim and citing similar cases). Courts from around the

country have reached the same conclusion. *See, e.g., Davis v. Doe 1*, No. 24-CV-00425-SPM,

2024 WL 4678947, at *1 (S.D. Ill. Nov. 5, 2024) (dismissing claims alleging vomiting and headaches from food containing bugs and citing cases reaching similar result); *Wilson v. Byrd*, No. 15-00160-KD-N, 2016 WL 1573265, at *7 (S.D. Ala. Mar. 14, 2016) (finding plaintiff's allegation that he became ill from tainted food served on one occasion, did not, alone, amount to a constitutional deprivation); *Bennett v. Misner*, No. 02-1662-HA, 2004 WL 2091473, at *20 (D. Or. Sept. 17, 2004) (discussing that isolated instances of food poisoning, temporary lapses in sanitary food service, or service of meals contaminated with maggots have been found to be not sufficiently serious to constitute an Eighth Amendment violation), *aff'd*, 180 Fed.Appx. 732 (9th Cir. 2006).

As to the subjective element of Plaintiff's claim, his bare assertion of these two ODRC Defendants' awareness that the food Plaintiff consumed had been removed from a trash can, is not sufficient to satisfy this element. Plaintiff has not accompanied his conclusory allegation with any facts suggesting that Defendants Sandridge and Sedlitz possessed a "sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish." *Broyles v. Corr. Med. Servs., Inc.,* 478 F. App'x 971, 975 (6th Cir. 2012) (citing *Horn v. Madison Cnty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994)). While admittedly, Plaintiff's second amended complaint is entitled to a liberal construction, his allegation contains no facts suggesting that that these Defendants consciously disregarded an excessive risk of harm to Plaintiff. For example, Plaintiff does not even minimally allege facts suggesting that these Defendants had specific awareness of any trash can contents that might present a serious risk to Plaintiff. Indeed, Plaintiff's unadorned allegation of knowledge merely "create[s] speculation or suspicion of a legally cognizable cause of action." *Mitchell v. Lamarca*, No. CV 23-10325, 2024 WL 4719084, at *6 (E.D. Mich. Sept. 20, 2024), *report and recommendation adopted,* No. 23-

10325, 2024 WL 4609572 (E.D. Mich. Oct. 28, 2024) (citing *League of United Latin Am.*

*Citizens*, *v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S. at 555). This is

insufficient as a matter of law to state a claim for relief. *Id*. At bottom, Plaintiff has not alleged

any facts even remotely suggesting that these Defendants acted with deliberate indifference to a

substantial risk of serious harm to Plaintiff.

For all of these reasons, it is **RECOMMENDED** that the Motions for Judgment on the

Pleadings be **GRANTED** as to Plaintiff's Eighth Amendment conditions of confinement claim.

### 2. Eighth Amendment Medical Deliberate Indifference Claim

Plaintiff also broadly suggests that he was delayed or denied medical treatment for his

food poisoning symptoms in violation of the Eighth Amendment. Again, it is necessary to

examine the precise nature of the factual allegations Plaintiff offers in support of this claim.

First, Plaintiff explains that his symptoms started on November 27, 2021, when he experienced

an upset stomach, cramping pains, severe diarrhea, and vomiting. (ECF No. 16 at ⁋ 33.) The

next day he vomited twice. (*Id.* at ⁋ 34.) He heard other inmates were sending in paper requests

to be seen by Medical. (*Id.* at ⁋ 38.) At an unspecified time, he informed "Medical" that he

needed to be seen to find out what's wrong with him because his stomach hurt and his "feces was

runny." (*Id*.) At another unspecified time, he sent in a medical request from stating "My

stomach is upset and I have been having pains for the past couple days." (*Id*. at 39.) "Medical"

refused to see him. (*Id*. at ⁋⁋ 64, 65.) Based on the loose chronology of events Plaintiff sets

forth, sometime after December 2, 2021, the date on which he first learned of the food service

incident, he advised medical that his experience "amount[ed] to a form of bacterial infection"

and that he "has high blood pressure, sugar diabetes type 2, and is on Chronic care." (*Id*. at ⁋⁋

64, 66.) On December 5, 2021, Plaintiff was "escorted to medical." (*Id*. at ⁋ 77.) When he

arrived at medical, he received a "mush fake screening," and he reported his symptoms including "abnormal bowel movements, pain in his stomach, and vomiting twice" to Defendants Sky Murray and Rachel Allen.  (*Id.* at ¶ 78.)  These Defendants "refused to provide medication or to recommend transport to an outside hospital to be checked by a doctor, regarding bacteria or other infections."  (*Id.* at ¶ 79.)  Further, they did not comply with ODRC policy regarding cases of suspected food poisoning and medical staff made jokes at Plaintiff's expense.  (*Id.* at ¶¶ 80, 81.)  On December 6, 2021, Plaintiff was escorted back to medical after demanding to be seen by a doctor.  (*Id.* at ¶ 101.)  Plaintiff was seen by either Defendant Dr. William Harlan or Defendant Dr. Raymond Corbett, but they failed to diagnose him despite his description of his intestinal issues.  (*Id.* at ¶ 102.)  Instead, the doctor he saw "quarantined" him and kept him on "'Quarantine Status' until Thursday December 9, 2021."  (*Id.* at ¶¶ 102, 107.)

An official violates the Eighth Amendment where he or she acts with "deliberate indifference to an inmate's serious medical needs." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021).  For an inmate to show that prison officials violated the Eighth Amendment by denying medical care, the inmate must show (1) that he or she was deprived of an objectively serious medical need, and (2) that the defendant knew "of and disregard[ed] an excessive risk to [his or her] health or safety." *Farmer,* 511 U.S. 825, 837; *Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018).

To satisfy the first element, or the objective prong, a serious medical need must be more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted).  Rather, "[t]he objective component requires the existence of a sufficiently serious medical need." *Broyles*, 478 F. App'x 971, 975.  A serious medical need is one that "has been diagnosed by a physician as mandating treatment *or* one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (emphasis in original). An injury is sufficiently serious to satisfy the objective component if a reasonable doctor or patient would find it "important and worthy of comment or treatment"; if it "significantly affects an individual's daily activities"; or if its existence causes "chronic and substantial pain." *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (internal citations omitted).

To satisfy the subjective prong, the plaintiff must show that the defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles*, 478 F. App'x at 975 (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal citations and quotations omitted).

Additionally, a plaintiff must demonstrate that the defendant knew of and disregarded an excessive risk to inmate health or safety by showing that (1) he was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) he actually drew the inference. *Farmer*, 511 U.S. 825, 837. The requirement that the defendant subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

21

As alleged here, any medical deliberate indifference claim Plaintiff is attempting to assert fails to meet either prong. First, as Plaintiff has described them, his alleged gastrointestinal issues do not constitute a serious medical need. Indeed, Plaintiff's allegations do not suggest that he sought treatment for his gastrointestinal issues because his symptoms were so severe that he thought such intervention was medically necessary. Instead, Plaintiff alleges that "[h]e heard other inmates were sending in paper requests forms to be seen by medical." (ECF No. 16 at ℙ 38.)

Further, courts are reluctant to find that occasional gastrointestinal symptoms alone may constitute a sufficiently serious medical need. *Rains v. Wellman*, No. 2:20-CV-32, 2022 WL 18587783, at *7 (W.D. Mich. Dec. 30, 2022), *report and recommendation adopted*, No. 2:20-CV-32, 2023 WL 543075 (W.D. Mich. Jan. 27, 2023) (citing *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (finding that the plaintiff failed to produce sufficient evidence that his alleged stomach disorders constituted serious medical needs); *Smith v. Hepp*, No. 18-CV-669-JDP, 2022 WL 1001183 (W.D. Wis. Apr. 4, 2022) ("Stomach distress often is not serious enough to support an Eighth Amendment claim" (citing *Riley El v. Godinez*, No. 13-c-5768, 2016 WL 4505038, at *11 (N.D. Ill. Aug. 29, 2016))). Here, although Plaintiff's allegations suggest that his gastrointestinal symptoms continued for a few days, he does not allege a deterioration of his condition or any complications arising from his alleged symptoms. Accordingly, the Court is not convinced that such an experience of gastrointestinal symptoms under the circumstances presented elevates those symptoms to the level of a serious medical need. *Id.*

Also, to the extent Plaintiff may be claiming delay in his receipt of medical care, he does not identify any specific Defendant who delayed his treatment after he made his request to be

seen by medical.  Rather, he merely states that "[m]edical refused to see [him]."  (*See, e.g.,* ECF No. 16 at ⁋ 65.)  To the extent Plaintiff suggests that certain Defendants had some obligation to seek medical attention on his behalf and that they failed in this regard, the Court views these allegations as directed to the issue of deliberate indifference.

Moreover, Plaintiff alleges that he was seen by medical staff.  Based on his description of events, his claim is more properly characterized as a disagreement as to whether his condition required treatment and the timing of that treatment.  That is, Plaintiff believes he should have been seen earlier and that he should have been provided medication or "transport[ed] to an outside hospital to be checked by a doctor, regarding bacteria or other infections."  (ECF No. 16 at ⁋ 79.)  Disagreement about the course of treatment does not support a proper claim under § 1983.  *Estelle,* 429 U.S. at 107; *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").  Negligence or medical malpractice does not amount to a constitutional violation.  *See Farmer,* 511 U.S. at 835-36; *Estelle,* 429 U.S. at 106.  Thus, any disagreement Plaintiff had regarding medical staff's decision to place him in quarantine following his report of his gastrointestinal symptoms is insufficient to state a § 1983 claim.

As to the subjective element, Plaintiff wholly fails to establish this element.  As with his conditions of confinement claim, Plaintiff's conclusory allegations of deliberate indifference are unaccompanied by any facts suggesting that any ODRC Defendants possessed a "sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish."  *Broyles,,* 478 F. App'x 971, 975.  To the extent that Plaintiff claims that

23

medical staff made jokes at his expense, Plaintiff does not provide any facts suggesting a culpable state of mind.   Moreover, disparaging statements do not rise to the level of a constitutional violation.  *Washington v. Miami Cnty*., No. 3:20-CV-173, 2022 WL 17326436, at *15 (S.D. Ohio Nov. 29, 2022).

Additionally, as to Plaintiff's claims against Drs. Harlan and Corbett, these claims fail for the additional reason that Plaintiff has not identified which of these Defendants allegedly denied him adequate medical care.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *Chappell v. Unknown Party #1*, No. 1:24-CV-358, 2024 WL 2075804, at *3 (W.D. Mich. May 7, 2024) (citing *Twombly*, 550 U.S. at 544)).

For these reasons, it is **RECOMMENDED** that the motions for judgment on the pleadings be **GRANTED** as to Plaintiff's Eighth Amendment medical deliberate indifference claim.

### 3.  Allegations of HIPAA violations or failure to follow ODRC Policies

Plaintiff also alleges that certain Defendants, including "'Health-Care Administrator' Meredyth McLaughlin" released his protected health information without his consent.  (*See, e.g.,* ECF No. 16 at ¶ 69.)  Title II of HIPAA, the Health Insurance Portability and Accountability Act of 1996, codified at 42 U.S.C. § 1320a *et seq.,* was created to protect against the unauthorized disclosure of health records and information.  *Stokley v. Dismas Charities, Inc*., No. 3:14CV-P30-S, 2014 WL 3721423, at *6–7 (W.D. Ky. July 28, 2014) (citing *Gratton v. United Parcel Serv., Inc.,* No. CV 07–3071, 2008 WL 4934056 (E.D.N.Y. Nov.14, 2008)).  However, only the Secretary of the Department of Health and Human Services may file suit to enforce its provisions. *Id.* (citing 42 U.S.C. § 1320d–5(d); *Sneed v. Pan Am. Hosp.,* 370 F. App'x 47, 50 (11th Cir.2010)).  Private citizens have no standing to sue a covered entity for a violation of

HIPAA.  *Id.* (citing *Adams v. Eureka Fire Prot. Dist.,* 352 F. App'x 137, 139 (8th Cir.2009) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *see also Carpenter v. Phillips,* 419 F. App'x 658, 658 (7th Cir.2011); *Siegler v. Ohio State Univ.,* No. 2:11–cv–170, 2011 WL 1990570 (S.D. Ohio May 23, 2011)).

To the extent that Plaintiff may be suggesting a Fourteenth Amendment violation arising from the alleged disclosure his medical information, the Sixth Circuit narrowly applies the right to informational privacy "only to interests that implicate a fundamental liberty interest." *Stokley,* 2014 WL 3721423, at *6–7 (citing *Bloch v. Ribar,* 156 F.3d 673, 684 (6th Cir.1998)).  Under this standard, the disclosure of a plaintiff's medical information concerning the symptoms of his food poisoning was found insufficient to state a Fourteenth Amendment claim.  *Id.* (citing *See Lee v. City of Columbus,* 636 F.3d 245, 261 (6th Cir. 2011) ("[U]nder our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution.")).  That conclusion applies here as well.

Plaintiff also claims that various Defendants failed to follow ODRC policy, including regarding testing for food poisoning.  "Failure to follow ODRC policy is "'not in and of itself a constitutional violation.'"  *Stone v. Ohio Parole Bd.,* No. 2:21-CV-884, 2023 WL 155903, at *7 (S.D. Ohio Jan. 11, 2023), *report and recommendation adopted,* No. 2:21-CV-884, 2023 WL 2018897 (S.D. Ohio Feb. 15, 2023) (quoting *McDougald v. Davis,* No. 2:16-CV-545, 2018 WL 1899229, at *7 (S.D. Ohio Apr. 20, 2018)).  "Section 1983 does not provide a remedy for alleged violations of state laws or regulations." *Id.* (citing *Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021)).  "And, '[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state

25

procedure.'" *Id.* (quoting *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D.

Mich. Aug. 30, 2021)). "Thus, the "failure to comply with [a state] administrative rule or policy

does not itself rise to the level of a constitutional violation.'" *Id.* (quoting *Williams v. Burke*, No.

2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases)).

Accordingly, it is **RECOMMENDED** that the ODRC Defendants' Motions be **GRANTED** as

to Plaintiff's claims alleging violations of HIPAA and ODRC policy.

### 4. First Amendment Retaliation Claim

Plaintiff also broadly alleges retaliation.  According to Plaintiff, this retaliation "consisted

of locking the inmates down, not answering their questions, not allowing them to have

recreation, when recreation was given it consisted of Plaintiff being allowed out of his cell for a

15 min window to get on the restricted Kiosk or to shower.  Most of the time mail was with-held,

or not picked up to prevent it from being sent out by the staff."  (ECF No. 16 at ¶ 117.)  Earlier in

his pleading, he alleges that, while he was "locked down 'quarantined'" he was "restricted from

generating new Informal Complaint Resolutions 'ICR's' or Grievances against ODRC of

Medical's staff."  (*Id.* at ¶ 92.)  Later in his pleading, he alleges without any specificity that he

was "prevented from filing grievances against health services, Aramark, and Defendants named

here."  (*Id.* at ¶ 132.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the

Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To set

forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even reading the Second Amended Complaint generously, Plaintiff's allegations as to any claim of retaliation are non-specific and and conclusory. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Thomas v. Michigan Dep't of Corr.,* No. 2:23-CV-191, 2024 WL 1046350, at *7 (W.D. Mich. Mar. 11, 2024) (citations and quotations omitted). Many of Plaintiff's numerous allegations simply do nothing more than assert the ultimate fact of retaliation, and frequently assert that ultimate fact against unspecified ODRC employees.

This obvious shortcoming aside, Plaintiff's claim of retaliation, when scrutinized, also is wholly contradicted by other allegations in his Second Amended Complaint. Such contradiction seriously undercuts the plausibility of such a claim. That is, while Plaintiff alleges that he was placed in lockdown as a form of retaliation, elsewhere in his pleading, he states that either Dr. Corbett or Dr. Harlan placed him in quarantine. This would be a reasonable response to Plaintiff's report of continued gastrointestinal symptoms. (ECF No. 16 at ¶¶ 102, 107.) Indeed, according to Plaintiff, the Health Care Administrator's review of his medical file reflected an assessment "for influenza like illness." (*Id*. at ¶ 108.) Further, although Plaintiff states that while he was in quarantine he was not permitted to use the J-pay system to generate new informal complaints or grievances, he also alleges that, after he realized he was restricted from the Kiosk, he filed an informal complaint resolution against medical in paper form. (*Id*. at ¶ 119.)

Finally, although Plaintiff alleges his transfer to CCI, he does not identify this transfer as a form of retaliation. Importantly, Plaintiff does not have a constitutional right to be housed in a certain facility. *Dziczkowski v. Anderson Cnty. Det. Facility*, No. 3:23-CV-141-TAV-JEM, 2023 WL 3739069, at *2 (E.D. Tenn. May 31, 2023) (citing *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (noting that, absent unusual circumstances, prison officials, rather than judges, should decide where a particular prisoner should be housed). Accordingly, under the circumstances here, the Court does not view Plaintiff as attempting to state any constitutional claim arising from this transfer to CCI.

For these reasons, it is **RECOMMENDED** that Defendants' Motions be **GRANTED** as to any retaliation claim.

### 5. Failure to Train

Under the heading "CLAIM TWO Failed to Train," (ECF No. 16 at ⁋ 146), Plaintiff states the following:

> The Supervisory Defendant's in paragraphs 30 through 144 as if fully rewritten herein have actively engaged in official duties, through the official's own individual actions, have violated the Constitution; the supervisors have abdicated their specific job responsibility, with the 'active performance of the supervisor's individual job function, directly resulting in the constitutional injury. To wit: Implicitly authorized, approved, or knowingly acquiesced" to the underlying constitutional violation, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate against the Plaintiff.

To the extent, Plaintiff is attempting to hold any supervisor liable in an individual capacity for the "alleged failure to adequately train employees ... [he] 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Poynter v. Whitley Cnty. Det. Ctr.*, 722 F. Supp. 3d 745, 756 (E.D. Ky. 2024) (citing *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011)). "Thus, absent personal involvement, a failure-to-

28

train claim against an individual official is properly deemed to be brought against them in their official capacity and treated as a claim against the municipality." *Id.* (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)).  Here, the named Defendants are ODRC employees. ODRC is an arm of the State of Ohio.  Accordingly, any theory of municipal liability, including failure to train or supervise, has no application.  *Scott v. Michigan,* 173 F. Supp. 2d 708, 714 (E.D. Mich. 2001).  And, as stated above, claims against the State of Ohio are barred by the Eleventh Amendment.

To the extent that Plaintiff is attempting to state a supervisory liability claim, any such claim also fails.  "[T]o succeed on a supervisory liability claim, [a plaintiff] must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'"  *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  This "requires some 'active unconstitutional behavior' on the part of the supervisor."  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).  In short, a plaintiff must plausibly allege that a supervisory defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct ... of his subordinates through the execution of his job functions."  *Id.* at 242.  This requires allegations of active involvement and a "causal connection."  *Crawford v. Tilley*, 15 F.4th 752, 761–62 (6th Cir. 2021).  Plaintiff's allegations here are limited to only a formulaic recitation of the elements of any such cause of action.  As such, they fail to plausibly suggest active involvement by any supervisory official or any causal connection.  Accordingly, the Court disregards these allegations.  For these reasons, it is **RECOMMENDED** that the Motions for Judgment on the

Pleadings be **GRANTED** as to any failure to train claim.

   **6. Equal Protection Claim**

   Plaintiff suggests that he was denied equal protection when he was harassed and retaliated against apparently for filing previous unidentified grievances.  (ECF No. 16 at ⁋ 130.)  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Bradford v. Linscott*, No. 1:23-CV-48, 2024 WL 3593640, at *14 (W.D. Mich. July 31, 2024) (quoting U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id*. (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

   "The threshold element of an equal protection claim is disparate treatment."  *Bradford,* 2024 WL 3593640, at *14 (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).  Further, "'[s]imilarly situated' is a term of art—a comparator ... must be similar in 'all relevant respects.'" *Id.* (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)).  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

   Plaintiff's allegation of an equal protection violation is wholly conclusory.  As to this claim, Plaintiff alleges, in its entirety:

   The Defendant's in paragraphs 30 through 144 as if fully rewritten herein each violated Plaintiff's equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution, when they intentionally targeted and

> discriminated against him treating him differently than others similarly situated without any rational basis for the difference.

(ECF No. 16 at ¶ 150.)  This is nothing more than a formulaic recitation of the elements of a cause of action.  As such, the Court disregards these allegations.  Accordingly, it is **RECOMMENDED** that the Motions for Judgement on the Pleadings filed by the ODRC Defendants be **GRANTED** as to Plaintiff's equal protection claim.

### 7.  Remaining Issues

Plaintiff's Second Amended Complaint is riddled with other allegations that the Court finds fail to state a claim.  For example, Plaintiff accuses certain ODRC Defendants, including Ms. Kearns, of inaction in response to his complaints or grievances.  (*See, e.g.,* ECF No. 16 at ¶¶ 95, 97.)  Plaintiff also asserts a failure to respond to his demands for information about the Aramark employee made through informal complaints.  (*Id*. at ¶¶ 63.)  However, § 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.  *Waller v. Richardson,* No. 1:23-CV-1224, 2024 WL 4143028, at *7 (W.D. Mich. Sept. 11, 2024) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Plaintiff also alleges threats and the use of degrading language by certain Defendants, including Defendant Tatman.  (*See, e.g.,* ECF No. 16 at ¶¶ 72-75.)  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987).  The same holds true as to Plaintiff's allegations that Defendant Mitchell-Jackson yelled at Plaintiff and others when they tried to speak with her.  (*Id*. at ¶¶ 103-104.)

### 8.  Dismissal of Plaintiff's Claims Against Remaining Defendants under 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B)

In light of the issues raised by the dispositive briefing, the Court finds it prudent to undertake a further *sua sponte* review of Plaintiff's Second Amended Complaint with respect to the remaining Defendants. Although this action survived the initial screen pursuant to 42 U.S.C. § 1915(e) and § 1915A, "**the Court has 'inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.'**" *Bloodworth v. Timmerman-Cooper*, No. 2:10-CV-1122, 2012 WL 604236, at *2 (S.D. Ohio Feb. 23, 2012), *report and recommendation adopted,* No. 2:10-CV-1122, 2012 WL 3727656 (S.D. Ohio Aug. 28, 2012) (quoting *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991)) (emphasis added).  Moreover, Section § 1915(e) grants courts authority to dismiss a case *at any time* if it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B); *Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *2 (6th Cir. Mar. 25, 2020) (emphasis added); *see also Yoder v. Stevenson*, No. CV 20-12992, 2021 WL 6973839, at *7 (E.D. Mich. Dec. 20, 2021), *report and recommendation adopted,* No. 20-12992, 2022 WL 493284 (E.D. Mich. Feb. 16, 2022) (*sua sponte* dismissing claims not addressed by dispositive motion).  Accordingly, the Court reconsiders the initial review and **RECOMMENDS** that the Second Amended Complaint be **DISMISSED** pursuant to 28 U.S.C. 1915(e) and 1915A, for the same reasons stated above, as to all remaining ODRC Defendants.

Finally, as to Ms. Woods, Plaintiff claims that she was the Aramark employee responsible for serving the food removed from the trash can.  Accordingly, Plaintiff's allegations against this Defendant are limited to his conditions of confinement claim.  Even accepting as true Plaintiff's allegation thar Ms. Woods, on one occasion, knowingly served food removed from a trash can, this claim fails for the same reasons discussed above.  In short, Plaintiff fails to set forth factual allegations suggesting that Ms. Woods' isolated action was undertaken with the

requisite knowledge of and disregard for an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837. That is, Plaintiff has not set included sufficient factual matter to render any Eighth Amendment claim against Ms. Woods plausible, *i.e.*, more than merely possible.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  The same is true as to any claims Plaintiff is attempting to assert against "Jane/John Doe 'Aramark Supervisor.'"  Accordingly, it is **RECOMMENDED** that Plaintiff's claims against these Defendants be **DISMISSED** for failure to state a claim.

### 9.  State Law Claims

Given that no federal claims remain as to the moving ODRC Defendants, Plaintiff's state law claims against these Defendants should be **DISMISSED** as well.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("Generally, if the federal claims are dismissed before trial, the state law claims should be dismissed as well.").

### IV.     CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that Defendant Aramark's Motion to Dismiss (ECF No. 47) be **GRANTED.**  Further, it is **RECOMMENDED** that the Motions for Judgment on the Pleadings (ECF Nos. 52, 71) be **GRANTED.**  Further, it is **RECOMMENDED** that Plaintiff's claims against any remaining Defendants be **DISMISSED** for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B). Finally, it is **RECOMMENDED** the Court decline to exercise supplemental jurisdiction over any remaining state law claims against the Defendants.  The request for an extension of time, ECF No. 62, is **DENIED** as moot.

## PROCEDURE ON OBJECTIONS

 If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

 The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).


**DATED:  January 13, 2025**           /s/ *Elizabeth A. Preston Deavers*
                                       **ELIZABETH A. PRESTON DEAVERS**
                                       **UNITED STATES MAGISTRATE JUDGE**